UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WEBSTER BANK, N.A., a national banking association, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No.: 1:16-cv-2522 ) |
| PIERCE & ASSOCIATES, P.C., | ) ) |
| Defendant. | ) JURY TRIAL DEMANDED ) |

**COMPLAINT FOR DAMAGES**
**(PROFESSIONAL NEGLIGENCE, BREACH OF CONTRACT,**
**AND BREACH OF FIDUCIARY DUTY)**

Plaintiff Webster Bank, N.A. ("Webster Bank"), by its counsel, for its Complaint for Damages against Defendant Pierce & Associates, P.C. ("Pierce") alleges as follows:

**NATURE OF THE ACTION**

1. This is an action for attorney malpractice, breach of contract, and breach of fiduciary duty.

2. In 2009, Webster Bank retained Pierce to represent it in filing certain residential mortgage foreclosure and breach of note actions in northern counties in the State of Illinois. During the course of this attorney-client relationship and after the attorney-client relationship ceased, Webster Bank discovered that Pierce gravely mishandled a number of these litigation matters. Webster Bank also discovered that Pierce acted contrary to Webster Bank's interests, failed to disclose material information to Webster Bank, and represented other litigants adverse to Webster Bank without seeking or securing a conflict waiver.

3. Webster Bank sustained significant damages as a direct result of Pierce's misconduct, and these damages include, but are not limited to, the attorneys' fees paid to Pierce for representation that did not meet the standard of care, attorneys' fees paid to others to rectify the issues created by Pierce, and other damages as discussed below.

## PARTIES

4. Webster Bank, N.A. is a national bank organized and existing under the laws of the United States having its main office in the State of Connecticut. Webster Bank is (and has been at all relevant times) a resident and citizen of the State of Connecticut.

5. Pierce & Associates, P.C. is a professional corporation organized and existing under the laws of the State of Illinois. Pierce provides title services and mortgage-related legal representation in the State of Illinois. Pierce is (and has been at all relevant times) a resident and citizen of the State of Illinois.

6. At all times relevant to this lawsuit, Pierce represented to the public that its lawyers had substantial experience in representing and advising clients efficiently in mortgage and title related legal matters. Pierce advertised that it has established an "effective system to continually monitor and enhance performance and processing resulting in exceptional timeline performance and communication." Pierce failed to meet the standards that it advertised and failed to meet the applicable standard of care in its representation of Webster Bank.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this case pursuant to diversity jurisdiction, 28 U.S.C. § 1332(a)(2), because Webster Bank and Pierce are domiciled in different states, and the amount-in-controversy exceeds $75,000. Specifically, Webster Bank is domiciled

in Connecticut; Pierce is domiciled in Illinois; and the amount-in-controversy exceeds $350,000.00.

8. This Court has personal jurisdiction over Pierce because Pierce has transacted business within the State of Illinois by representing Webster Bank and other parties in litigation filed in courts in Illinois.

9. Venue is proper in the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

**FACTS COMMON TO ALL COUNTS**

*Webster Bank Retains Pierce to Represent it in Various Mortgage Foreclosure Related Actions*

10. In or about 2009, Webster Bank retained Pierce to represent it in filing residential mortgage foreclosure and breach of note actions in northern counties in the State of Illinois. Pierce accepted the representation and committed to represent Webster Bank competently in these matters.

11. During the course of its representation of Webster Bank, Pierce's responsibilities included, without limitation, investigating, preparing, filing, and prosecuting residential mortgage foreclosure actions and breach of note actions on behalf of Webster Bank and defending Webster Bank in mortgage foreclosure actions filed by senior lien priority lenders.

*Specific Matters Pierce Mishandled for Webster Bank*

12. Webster Bank sustained significant damages as a result of Pierce's misconduct during its engagement, and these damages include, but are not limited to, the attorneys' fees paid to Pierce for representation that did not meet the ethical standards and the standard of care,

attorneys' fees paid to others to rectify the issues created by Pierce, and other damages as discussed below.

### *In Re John Adam,* Case No. 09-4288, United State Bankruptcy Court for the Northern District of Illinois

13. Webster Bank held a note executed by John Adam ("Adam") secured by a second mortgage on his home.

14. In November 2009, Adam filed for Chapter 7 bankruptcy protection.

15. Webster Bank does not have a record of having received notice of the bankruptcy. Adam was discharged in February 2010.

16. On July 26, 2012 Pierce, on behalf of Webster Bank, filed a "Complaint to Recover on Note" against Adam (the "Litigation").

17. Adam contacted an attorney to represent him in the Litigation.

18. Pierce failed to appear in court on the first two court appearance dates.

19. After the second missed court date, Adam informed his attorney of his bankruptcy discharge, and the attorney wrote a letter to Pierce informing them of the discharge.

20. Pierce failed to appear in court on the scheduled third appearance date, and the case was dismissed for want of prosecution.

21. Approximately two weeks later, Pierce filed a motion to voluntarily dismiss the lawsuit, but failed to appear on the noticed date.

22. Pierce was negligent in its representation of Webster Bank in that it failed to run a bankruptcy search before it filed suit on behalf of Webster Bank and failed to appear on numerous court dates. Pierce never informed Webster Bank of its failures to appear and its failure to run a proper, pre-filing bankruptcy search, all of which violated the applicable standard of care owed to Webster Bank.

23. In January, 2014, Adam re-opened his 2009 bankruptcy matter and brought an action against Webster Bank and Pierce seeking an order of civil contempt for violation of 11 U.S.C. §524. The litigation subsequently settled, but Webster Bank incurred attorneys' fees and other costs in defending the civil contempt action.

24. Pierce's inaction and negligence in *Adam* resulted in damages to Webster Bank in the principal amount of $19,363.60.

### *Webster Bank v. Kristen Jasinski*, Case Nos. 10 L 1972, 12 L 6848 and 13 L 10056, Circuit Court of Cook County, Illinois.

25. Pierce was retained to represent Webster Bank in a breach of note action against Kristen Jasinski ("Jasinski").

26. Pierce filed case no. 10 L 1972, and Jasinski moved to dismiss.

27. Pierce voluntarily dismissed the action.

28. Pierce then filed case no. 12 L 6848, which was dismissed for want of prosecution due to Pierce's failure to appear on a scheduled court date.

29. While 12 L 6848 was dismissed, Pierce filed case no. 13 L 10056. Pierce then filed a motion to vacate the dismissal for want of prosecution in case no. 12 L 6848, and although Pierce was successful in vacating the dismissal, Pierce, at the same hearing, orally moved to voluntarily dismiss the case, and the 2012 case was voluntarily dismissed.

30. Jasinski then filed a motion to dismiss case no. 13 L 10056 on the basis that 735 ILCS 5/13-217 allows a party to refile an action once after a voluntary dismissal, but does not allow a party to file a third action after voluntarily dismissing the same cause of action two times.

31. The Court agreed with Jasinski, and Webster Bank lost its legal remedy against Jasinski for breach of note.

32. Pierce failed to notify Webster Bank of the dismissal for want of prosecution and failed to notify Webster Bank of the legal ramifications in filing an impermissible third case. Pierce's actions and inactions in this matter failed to meet the applicable standard of care owed to Webster Bank.

33. Webster Bank's damages consist of the amount due on the promissory note executed by Jasinski that it can no longer seek to enforce and its attorneys' fees in its unsuccessful efforts to mitigate its losses by seeking to remediate the problems caused by Pierce's actions.

34. Pierce's inaction and negligence in the various *Jasinski* matters resulted in damages to Webster Bank in the principal amount of $176,217.24.

### *Webster Bank v. Ruth Manzo*, Case No. 10 CH 330, Circuit Court for the Nineteenth Judicial Circuit, Lake County, Illinois

35. Pierce represented Webster Bank in this mortgage foreclosure action on a HUD loan.

36. Webster Bank instructed Pierce to have the Sheriff's deed executed in favor of Webster Bank.

37. Pierce had the Sheriff of Lake County execute the deed in favor of HUD.

38. Webster Bank made many requests to Pierce to have the error corrected and to record the deed, but after a period of time lapsed without a recorded deed, Webster Bank retained new counsel who immediately filed an additional appearance in the litigation, obtained a new and correct deed from the Sheriff and recorded the deed. Pierce's actions and inactions in this matter failed to meet the applicable standard of care owed to Webster Bank.

39. Webster Bank's damages consist of the attorneys' fees and costs associated with correcting Pierce's error.

40. Pierce's inactions and negligence in the *Manzo* matter resulted in damages to Webster Bank in the principal amount of $2,013.75.

### *Webster Bank v. Erron Nielsen, et al.*, Case Nos. 13 AR 552 and 12 CH 2923, Circuit Court for the Twenty-second Judicial Circuit, McHenry County, Illinois

41. Pierce filed a mortgage foreclosure action on behalf of Ocwen Loan Servicing, LLC ("Ocwen") in case no. 12 CH 2923 to foreclose a first mortgage on property owned by borrower Erron Nielsen ("Nielsen") located in Algonquin, Illinois (the "Algonquin Property").

42. Webster Bank held a second mortgage secured by the Algonquin Property. Pierce represented both Ocwen and Webster Bank in the mortgage foreclosure action and filed an answer on behalf of Webster Bank in that litigation.

43. Pierce then filed a breach of note action against Nielson as case no. 13 AR 552.

44. In representing both Ocwen and Webster Bank, Pierce failed to obtain a waiver of a conflict of interest from Webster Bank. Pierce's actions and inactions in this matter failed to meet the applicable standard of care owed to Webster Bank.

45. Webster Bank's damages consist of attorneys' fees and costs of new counsel.

46. Webster Bank ultimately obtained a judgment in the breach of note action.

47. Pierce's inaction and negligence and failure to obtain a waiver of conflict from Webster Bank resulted in damages to Webster Bank in the amount of $10,543.19.

### *Webster Bank v. Sharon Rinaldi*, Case No. 13 CH 7225, Circuit Court of Cook County, Illinois

48. Pierce filed a mortgage foreclosure action on behalf of Deutsche Bank National Trust Company, as Trustee for Morgan Stanley Mortgage Loan Trust 2005-11AR ("Deutsche Bank") to foreclose a first mortgage on property owned by borrower Sharon Rinaldi ("Rinaldi") located in Inverness, Illinois ("Inverness Property").

49. Webster Bank held a second mortgage secured by the Inverness Property and retained Pierce since its loan was also in default.

50. Pierce filed an appearance and answer on behalf of Webster Bank in the Deutsche Bank action.

51. Pierce failed to obtain a waiver of a conflict of interest from Webster Bank.

52. On behalf of Deutsche Bank, Pierce filed a motion for summary judgment against Webster Bank.

53. Once Webster Bank became aware of the motion for summary judgment and conflict, it retained new counsel to represent it in the litigation. Pierce's actions and inactions in this matter failed to meet the applicable standard of care owed to Webster Bank.

54. Webster Bank's damages consist of the attorneys' fees and costs of new counsel.

55. Pierce's inaction and negligence and failure to obtain a waiver of conflict from Webster Bank resulted in damages to Webster Bank in the amount of $9,108.18.

***Webster Bank v. Bradly Kovin*, Case No. 11 L 233, 13 L 684, Circuit Court for the Nineteenth Judicial Circuit, Lake County, Illinois**

56. Pierce filed a breach of note action against Bradly Kovin ("Kovin") in case no. 11 L 233.

57. Case no. 11 L 233 was set for trial on June 25, 2012, but Pierce did not appear in court on the trial date, and the case was dismissed for want of prosecution.

58. Pierce reinstated the case and a new trial date was set for Monday, October 22, 2012.

59. Pierce failed to notify Webster Bank of the new trial date until Friday, October 19, 2012, and Webster Bank agreed to the voluntary dismissal of the case on the trial date since it would be unable to provide a witness on such short notice.

60. Pierce re-filed the breach of note case as case no. 13 L 684.

61. Kovin filed an answer and affirmative defenses in case no. 13 L 684.

62. At a scheduling court date, Pierce failed to appear; however, Kovin's attorney sent a copy of the scheduling order to Pierce.

63. When Webster Bank learned of Pierce's mismanagement of a number of its other cases, it retained new counsel to look at the facts of this case.

64. In this action, Pierce failed to:

    (1) file an Illinois Supreme Court Rule 222 affidavit attesting that damages exceeded $50,000;

    (2) file an answer to Kovin's affirmative defenses; and

    (3) comply with the Illinois Supreme Court Rule 218 order requiring the disclosure of witnesses.

65. New counsel immediately sought leave to answer the affirmative defenses and obtain a new Rule 218 scheduling order. New counsel also filed a motion for leave to file a Rule 222 affidavit (so that Webster Bank's damages could not be reduced to a maximum of $50,000 for having failed to file a Rule 222 affidavit).

66. Before hearing on the motion, and to avoid uncertainty, Webster Bank settled the matter with Kovin. Webster Bank's damages consist of debt forgiveness in the settlement, and attorneys' fees in retaining new counsel.

67. Pierce's actions and inactions in this matter failed to meet the applicable standard of care owed to Webster Bank. Pierce's inaction and gross negligence in the *Kovin* matter resulted in damages to Webster Bank in the amount of $130,484.11.

### *Webster Bank v. George Richter and Mary Richter*, Case No. 10 L 636, Circuit Court for the Nineteenth Judicial Circuit, Lake County, Illinois

68. On July 8, 2010 Pierce filed suit on behalf of Webster Bank against George and Mary Richter (collectively, the "Richters") for breach of note.

69. On January 4, 2011, the court entered a default judgment against the Richters for their failure to appear in the lawsuit.

70. Pierce recorded a memorandum of judgment with the Recorder of Lake County.

71. In early 2015, Pierce informed Webster Bank that the Richters had filed for Chapter 7 bankruptcy protection prior to the filing of Webster Bank's lawsuit and obtained a discharge in bankruptcy on April 5, 2010, which was prior to the entry of the judgment.

72. Pierce failed to properly investigate and run a bankruptcy check before filing suit or seeking judgment.

73. Webster Bank's damages consist of attorneys' fees and costs in vacating the judgment and dismissing the lawsuit and recording a release of the memorandum of judgment.

74. Pierce's actions and inactions in this matter failed to meet the applicable standard of care owed to Webster Bank. Pierce's inaction and negligence in properly investigating the matter prior to filing suit resulted in damages to Webster Bank in the amount of $2,493.90 in the *Richter* matter.

### *Webster Bank v. Kenneth Urbieta*, Case No. 09 M1 188336, Circuit Court of Cook County, Illinois

75. Pierce filed a breach of note action on behalf of Webster Bank against Kenneth Urbieta ("Urbieta").

76. In June, 2010, during the pendency of the litigation, Urbieta filed for bankruptcy protection. Notice of the bankruptcy was sent to Webster Bank in care of Pierce.

77. Pierce never informed Webster Bank of Urbieta's bankruptcy filing.

78. On October 19, 2010, Urbieta obtained a discharge in bankruptcy. On February 17, 2011 Pierce obtained a judgment in favor of Webster Bank against Urbieta in violation of automatic stay in Urbieta's bankruptcy.

79. On August 2, 2011, Pierce recorded the memorandum of judgment with the Recorder of Deeds of Cook County.

80. In early 2015, Pierce informed Webster Bank of Urbieta's bankruptcy discharge.

81. Pierce's actions and inactions in this matter failed to meet the applicable standard of care owed to Webster Bank. Webster Bank's damages consist of attorneys' fees and costs in recording a release of the memorandum of judgment.

82. Pierce's inaction and negligence in the *Urbieta* matter resulted in damages to Webster Bank in the amount of $604.94.

***Webster Bank v. James Allegretti and Alicia Allegretti*, Case Nos. 10 L 1223; 13 L 576, Circuit Court of Cook County, Illinois**

83. Pierce was retained to represent Webster Bank in a breach of note action against James Allegretti and Alicia Allegretti (collectively, the "Allegrettis") relating to a note dated July 11, 2007 (the "Note").

84. As security for the Note, Webster Bank held a second mortgage secured by property owned by the Allegrettis located in Northbrook, Illinois (the "Northbrook Property").

85. Pierce filed case no. 10 L 1223 for breach of the Note, and on November 30, 2010, Pierce voluntarily dismissed the case with leave to reinstate.

86. On March 12, 2012, Pierce filed a mortgage foreclosure action on behalf of Deutsche Bank National Trust Company ("Deutsche Bank") to foreclose a first mortgage on the Northbrook Property and named Webster Bank as a defendant in the action.

87. In October, 2012, and while the Deutsche Bank mortgage foreclosure matter was pending, Pierce filed a motion to reinstate case no. 10 L 1223 and later notified Webster Bank that the motion to reinstate was stricken because it was filed too late.

88. In January 2013, and while the Deutsche Bank mortgage foreclosure action was pending, Pierce filed case no. 13 L 576 on behalf of Webster Bank for breach of Note.

89. Pierce failed to obtain a waiver of a conflict of interest from Webster Bank.

90. In February, 2013, Deutsche Bank voluntarily dismissed its mortgage foreclosure action.

91. Once Webster Bank became aware of the conflict, it retained new counsel to represent it in case no. 13 L 576. Pierce's actions and inactions in this matter failed to meet the applicable standard of care owed to Webster Bank.

92. Webster Bank's damages consist of the attorneys' fees and costs of new counsel.

93. Pierce's inaction and negligence and failure to obtain a waiver of conflict from Webster Bank resulted in damages to Webster Bank in the amount of $5,695.92.

*Webster Bank Terminates its Relationship with Pierce*

94. Once Webster Bank became aware of the serious issues stemming from Pierce's representation in its various foreclosure and breach of note actions, Webster Bank terminated its business relationship with Pierce.

95. After termination of their business relationship, Webster Bank continued to thoroughly investigate the matters being handled by Pierce, and found instances of misrepresentation and inaction by Pierce.

96. On October 1, 2014, Webster Bank sent a letter to Denis Pierce, partner, managing attorney and supervisor of the attorneys in the firm bearing his name, to address the

negligent actions by Pierce. On December 30, 2014, Denis Pierce issued a response to Webster Bank's complaint letter, denying any wrongdoing by Pierce.

97. From approximately April, 1975, through the present time, Pierce & Associates, P.C. has been in the business of providing mortgage banking legal assistance to mortgage lenders and financial institutions.

98. Pierce advertises on its website that it "has developed a strong Management and Quality Control system" and that it "truly understands the need for good customer service and communication."

99. Though Pierce advertises that "good customer service and communication" "is our top priority," in all cases noted above, there was a gross failure to communicate with Webster Bank.

100. During its representation of Webster Bank, Pierce failed to meet its advertised standards of practice with regards to communication and quality of service, failing in many instances and in various matters to take proper action and/or communicate material information to Webster Bank, causing Webster Bank significant damages.

### COUNT I
### PROFESSIONAL NEGLIGENCE

101. Webster Bank repeats and realleges the allegations contained in Paragraphs 1 through 100 of the Complaint as if fully set forth herein.

102. At all times relevant to this claim, an attorney-client relationship existed between Webster Bank and Pierce.

103. As counsel to Webster Bank, Pierce owed Webster Bank a duty to exercise that degree of care, knowledge, skill, competence and diligence in representing its interests used by reasonably careful attorneys providing services in similar circumstances.

104. Pierce further owed Webster Bank a duty to comply with the standard of care of

attorneys holding themselves out as having special expertise in residential mortgage related litigation.

105. Pierce owed Webster Bank a duty to represent its interests honestly and in good faith and to make full disclosure of all known information that was important and material to Webster Bank's affairs.

106. Pierce's conduct as described above fell beneath the applicable standard of care.

107. As described with more particularity above, as a direct and proximate result of Pierce's professional negligence, Webster Bank suffered damages related to various matters handled by Pierce in a total, principal amount exceeding $350,000.00.

## COUNT II
## BREACH OF CONTRACT

108. Webster Bank repeats and realleges the allegations contained in Paragraphs 1 through 107 of the Complaint as if fully set forth herein.

109. In agreeing to represent Webster Bank, Pierce promised Webster Bank that it would render legal services on its behalf in accordance with the standards required by the legal profession at large, as well as required by attorneys professing to have special expertise in mortgage related legal matters.

110. Pierce further promised to protect Webster Bank's interests in the various mortgage foreclosure and breach of note actions it was retained to handle.

111. As more fully described above, Pierce materially breached its contractual obligations by, among other things, failing to conduct a proper, pre-filing investigation before filings actions; failing to appear at court hearings; failing to notify Webster Bank of material information; improperly filing and dismissing actions multiple times; filing claims against Webster Bank without its permission and without a conflict waiver; and failing to competently prosecute and/or defend litigation on Webster Bank's behalf.

112. All conditions precedent to the performance of Pierce's contractual obligations have been performed or have occurred.

113. As described with more particularity above, as a direct and proximate result of Pierce's breach of its contractual obligations, Webster Bank suffered damages in a total principal amount in excess of $350,000.00.

## COUNT III
## BREACH OF FIDUCIARY DUTY

114. Webster Bank repeats and realleges the allegations contained in Paragraphs 1 through 113 of the Complaint as if fully set forth herein.

115. As Webster Bank's counsel, Pierce owed Webster Bank a fiduciary duty, which included a duty to act and give advice for its benefit, to act in good faith and in its best interests, to exercise independent professional judgment and undivided loyalty on its behalf, to pursue its lawful objectives, to represent no adverse interests and to make full disclosure to Webster Bank in a timely fashion of all known information that was important and material to the corporation's affairs.

116. Pierce further had a duty to deal honestly with Webster Bank and to disclose to it all material information concerning Webster Bank's interests that came into its possession.

117. As more fully described above, Pierce violated its fiduciary duties by, among other things, failing to notify Webster Bank of material information; filing claims against Webster Bank without its permission and without a conflict waiver; and failing to fully and competently represent Webster Bank in various matters.

118. As described with more particularity above, as a direct and proximate result of Pierce's breach of its fiduciary duties, Webster Bank suffered damages in a total principal amount in excess of $350,000.00.

119. Pierce's breach of fiduciary duty was done in reckless disregard of Webster Bank's interests and rights and was malicious, justifying an award of punitive damages.

**PRAYER FOR RELIEF**

For relief, Plaintiff Webster Bank, N.A. requests that this Court enter judgment in its favor and against Defendant Pierce & Associates, P.C. for the following:

    A.    Judgment in its favor on all Counts;

    B.    An award of damages in an amount to be proven as to each Count at trial;

    C.    Costs, expenses, and attorneys' fees associated with the prosecution of this action;

    D.    Pre-judgment and post-judgment interest;

    E.    Punitive damages on Count III; and

    F.    All other relief to which Webster Bank may be entitled.

Respectfully submitted,

THOMPSON COBURN LLP

By: /s/ Todd A. Rowden
    Todd A. Rowden, #6201929
    Caroline Ackerman, #6312215
    55 E. Monroe St., 37th Floor
    Chicago, IL 60603
    312-346-7500
    312-580-2201 FAX
    trowden@thompsoncoburn.com
    cackerman@thompsoncoburn.com

    Christopher M. Hohn, #6230989
    Thompson Coburn LLP
    One US Bank Plaza, Suite 2500
    Saint Louis, MO 63101
    314-552-6000
    314-552-7159 FAX
    chohn@thompsoncoburn.com

Attorneys for Plaintiff Webster Bank, N.A.