IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WEBSTER BANK, N.A., | ) |
| Plaintiff, | ) |
| v. | ) No. 16 C 2522 |
| PIERCE & ASSOCIATES, P.C., | ) Judge Virginia M. Kendall |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Webster Bank, N.A. ("The Bank") brings this Complaint against Defendant Pierce & Associates, P.C. ("Pierce"). (Dkt. 24.) The Bank alleges attorney malpractice (Count I) or alternatively breach of contract (Count II) in six matters involving the Bank's clients (Adam, Jasinski, Kovin, Richters, Urbieta, and Manzo) arising from Pierce's handling of mortgage foreclosures and breach of notes cases. Further, the Bank alleges breach of fiduciary duty (Count III) and fraud (Count IV) in three matters involving clients (Nielsen, Rinaldi, and Allegrettis) where Pierce allegedly failed to disclose conflicts of interest. The Bank claims $350,000.00 in damages and seeks punitive damages for breach of fiduciary duty and fraud. Pierce moves to dismiss all claims pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). [30] For the following reasons, the motion is granted in part and denied in part.

1

**BACKGROUND**

In 2009, Webster Bank retained Pierce to represent it in filing mortgage foreclosures and breach of note actions in Illinois.[1] (Dkt. 24, at 3-4.) Pierce represented itself as competent in these matters. (*Id.*) The Bank and Pierce formed an attorney-client relationship where the Bank paid a flat fee to Pierce for each matter handled. Pierce's responsibilities included preparing, filing, and prosecuting mortgage foreclosure actions and breach of note actions, as well as defending mortgage foreclosures by senior lien holders on behalf of the Bank. (*Id.* at 5.)

The Bank alleges that Pierce failed to fulfill these duties and responsibilities in matters related to nine of its client cases. In three of these matters (Adam, Kovin, and Manzo), subsequent counsel ultimately settled or corrected the breach of note or mortgage foreclosure suits. (Dkt. 24, at 5-7, 9-11, 13-14, ¶¶ 21-36, 55-74, 95-103.) In another three matters (Jasinski, Richters, and Urbieta), subsequent counsel did not or could not resurrect breach of note suits. (Dkt. 24, at 7-9, 11-13, ¶¶ 37-54, 75-94.) In the remaining three matters (Nielsen, Rinaldi, and Allegrettis), subsequent counsel represented the Bank in mortgage foreclosure cases where Pierce did not disclose that it simultaneously represented a senior lien holder on the same foreclosures. (Dkt. 24, at 14-18, ¶¶ 104-140.)

**A. Suits Ultimately Settled or Corrected by Counsel**

The Bank alleges that Pierce failed to properly file and prosecute three suits involving their clients: John Adam, Bradly Kovin, and Ruth Manzo.

First, the Bank alleges that Pierce mishandled a case involving its client John Adam ("Adam") in the Circuit Court of Cook County (Case 2012 L 53). (Dkt. 24, at 5-7, ¶¶ 21-36.) In that case, the Bank held a note from Adam that was secured by his second mortgage. Adam filed

---
[1] All relevant dates provided in the Amended Complaint are noted.

for bankruptcy in November 2009, which was discharged in February 2010. On behalf of the Bank, Pierce filed a Complaint to Recover Note against Adam on July 26, 2012, without running a search for prior bankruptcy. In January 2014, Adam re-opened his case and sought an Order of Civil Contempt against the Bank and Pierce for seeking to enforce the Bank's note against him after it had been discharged. At that point, the Bank retained and paid separate counsel in the Civil Contempt Proceeding, which was ultimately settled. The Bank incurred attorney fees and costs for this after February 23, 2014. The Bank alleges that Pierce's mishandling of the Adam matter caused approximately $19,363.00 in damages to pay for subsequent counsel and court costs associated with the Civil Contempt Proceeding.

The Bank further alleges that Pierce mishandled the case involving its client Bradly Kovin ("Kovin") in the Circuit Court of Lake County (Case Nos. 11 L 233 & 13 L 684). (Dkt. 24, at 9-11, ¶¶ 55-74.) Kovin breached a note held by the Bank. After Pierce filed and voluntarily dismissed Case No. 11 L 233, Pierce re-filed the matter as Case No. 13 L 684. Pierce failed to file an affidavit testifying to the amount in controversy, appear at a scheduling conference, comply with state rules about disclosing witnesses and scheduling orders, and timely reply to Kovin's affirmative defenses. The Bank retained and paid separate counsel, who sought leave to answer the affirmative defenses, obtain a scheduling order, and file an affidavit on the amount in controversy. The Bank and subsequent counsel ultimately settled this case with Kovin. Because the Bank had to pay for subsequent counsel and lost damages to which it would have been entitled had the promissory note been fully enforced rather than settled, the Bank alleges that Pierce's handling of the Kovin matter caused the Bank $130,484.11 in damages ($116,528.05 in debt forgiveness and $13,956.06 in attorneys' fees).

The Bank also alleges that Pierce mishandled the case of Ruth Manzo ("Manzo") in the Circuit Court of Lake County (Case No. 10 CH 330). (Dkt. 24, at 13-13, ¶¶ 95-103.) Manzo defaulted on a Housing and Urban Development ("HUD") loan for a property mortgaged by the Bank. The Bank retained Pierce to have the Sheriff execute the deed for the mortgage foreclosure action in its favor. Instead, Pierce had the Sheriff execute the deed in favor of HUD. The Bank repeatedly requested that Pierce correct the error. The Bank accordingly retained and paid subsequent counsel, who filed an appearance and ultimately had the deed recorded correctly. Because the Bank had to pay for subsequent counsel and additional court costs, the Bank alleges that Pierce's handling of Manzo's matter caused $2,013.75 in damages.

### B. Suits that Were Not, or Could Not Be, Settled or Corrected

The Bank further alleges that Pierce failed to properly handle three breach of note suits involving their clients Kristen Jasinski, George and Mary Richter, and Kenneth Urbieta.

The Bank alleges that Pierce mishandled cases in the Circuit Court of Cook County involving its client Kristen Jasinski ("Jasinski") (Case Nos. 10 L 1972, 12 L 6848, & 13 L 10056). (Dkt. 24, at 7-9, ¶¶ 37-54.) When Jasinski breached a note held by the Bank, Pierce filed Case No. 10 L 1972 against her and later dismissed it voluntarily. Pierce later filed Case No. 12 L 6848, but failed to appear in court, so the court dismissed the case for want of prosecution. Pierce successfully moved to vacate this dismissal, but moved to voluntarily dismiss it again at the same hearing, which the court granted. Pierce later filed Case No. 13 L 10056. The court granted Jasinski's Motion to Dismiss because Illinois statute 735 ILCS 5/13-217 does not allow a party to file a third cause of action after voluntarily dismissing the same action twice before. Pierce failed to notify the Bank about the court dismissing Case No. 12 L 6848 and the implications of filing Case No. 13 L 10056. The Bank retained and paid separate counsel to

4

attempt to vacate Pierce's voluntary dismissal of Case No. 12 L 6848. They did not succeed. Because the Bank had to pay for subsequent counsel and lost damages to which it was would have been entitled, the Bank alleges that Pierce's handling of the Jasinski matter caused $176,217.24 in damages.[2]

The Bank also alleges that Pierce mishandled its case involving George and Mary Richter ("Richters") in the Circuit Court of Lake County (Case No. 10 L 636). (Dkt. 24, at 11-12, ¶¶ 75-83.) The Richters filed for bankruptcy and were discharged on April 5, 2010. Pierce filed Case No. 10 L 636 on July 8, 2010, without running a search for prior bankruptcies. On January 4, 2011, the court entered a default judgment against the Richters when they failed to appear. In early 2015, Pierce informed the Bank that the Richters had filed for bankruptcy and obtained a discharge. The Bank accordingly retained and paid separate counsel to vacate the judgment, dismiss the lawsuit, and record a release of the memorandum of judgment. Because the Bank had to pay for subsequent counsel and additional court costs, the Bank alleges that Pierce's mishandling of the Richters' matter caused $2,493.90 in damages.

Similarly, the Bank alleges that Pierce mishandled the case of Kenneth Urbieta ("Urbieta") in the Circuit Court of Cook County (Case No. 09 M1 188336). (Dkt. 24, at 12-13, ¶¶ 84-94.) Urbieta breached a note held by the Bank. Pierce filed Case No. 09 M1 188366. In June 2010, Urbieta filed for bankruptcy while the litigation was pending and was discharged on October 19, 2010. Pierce did not inform the Bank about this. On February 17, 2011, Pierce obtained judgment in favor of the Bank against Urbieta. On August 2, 2011, Pierce recorded the memorandum of judgment with the county's Recorder of Deeds. In early 2015, Pierce informed the Bank of Urbieta's bankruptcy discharge. The Bank retained and paid separate counsel to vacate the judgment, dismiss the lawsuit, and record a release of the memorandum of judgment.

---

[2] Plaintiff does not provide the promissory note figures and attorneys' fees used to calculate this sum.

Because the Bank had to pay for subsequent counsel and additional court costs, the Bank alleges that Pierce's handling of Urbieta's matter caused $604.94 in damages.

### C. Mortgage Foreclosure Suits Where Pierce Did Not Disclose Simultaneous Representation of Senior Lien Holder

In the remaining three matters, Pierce represented the Bank in mortgage foreclosures but did not disclose that the firm simultaneously represented a senior lien holder on the same foreclosures. (Dkt. 24, at 14-18, ¶¶ 104-140.)

In the Erron Nielsen case, Pierce filed an action on behalf of Ocwen Loan Servicing, LLC ("Ocwen") in McHenry County Case No. 12 CH 2923 to foreclose a first mortgage on property owned by Nielsen in Algonquin, Illinois. The Bank held a second mortgage secured by this property. Pierce did not disclose to the Bank that it represented Ocwen on this matter and did not obtain in advance a waiver of conduct for the conflict. Pierce filed an answer on behalf of the Bank, thus representing both Ocwen and the Bank in the matter. Pierce then filed Case No. 13 AR 551, a breach of note action against Nielsen, on behalf of the Bank. The Bank retained separate counsel to obtain judgment in Case No. 13 AR 551. Because the Bank paid for subsequent counsel and court costs, the Bank alleges that Pierce's failure to disclose the conflict of interest in the Nielsen matter caused $10,543.19 in damages.

In the Sharon Rinaldi case in Cook County (Case No. 13 CH 7225), Pierce filed an action on behalf of Deutsche Bank National Trust Company as a Trustee for Morgan Stanley Mortgage Loan Trust 2005-11AR ("Deutsche Bank") to foreclose a first mortgage on property owned by Rinaldi in Inverness, Illinois. Webster Bank held a second mortgage secured by this property. Pierce did not disclose to Webster Bank that it represented Deutsche Bank on this matter and did not obtain a waiver of conduct in advance for the conflict. Pierce filed an appearance and answer on behalf of Webster Bank, thus representing both Deutsche Bank and Webster Bank in the

matter. Pierce then filed a motion for summary judgment against Webster Bank. Once aware, Webster Bank retained separate counsel to represent it in Case No. 13 CH 7225. Because Webster Bank had to pay for subsequent counsel and court costs, it alleges that Pierce's failure to disclose the conflict of interest in the Rinaldi matter caused $9,108.18 in damages.

Lastly, in the James and Alicia Allegretti matter in Cook County (Case Nos. 10 L 1223, & 13 L 576), the Allegrettis held a note from the Bank. As security for the Note, Webster Bank held a second mortgage secured by property owned by the Allegrettis located in Northbrook, Illinois. On November 30, 2010, Pierce filed Case No. 10 L 1223 for breach of note and then voluntarily dismissed with leave to reinstate. On March 12, 2012, Pierce filed an action on behalf of Deutsche Bank to foreclose a first mortgage on this property, naming Webster Bank as a defendant. Pierce did not disclose to Webster Bank that it represented Deutsche Bank on this matter and did not obtain a waiver of conduct in advance for the conflict. While that motion was pending, in October 2012 Pierce filed a motion to reinstate Case No. 10 L 1223. The court struck the motion as untimely. In January 2013, Pierce filed Case No. 13 L 576 on behalf of Webster Bank for breach of note. In February 2013, Deutsche Bank voluntarily dismissed its foreclosure action. Webster Bank then retained separate counsel to represent it in Case No. 13 L 576. Because Webster Bank had to pay for subsequent counsel and court costs, it alleges that Pierce's failure to disclose the conflict of interest in the Allegretti matter caused $5,695.92 in damages.

Ultimately, the Bank terminated its business and their contractual relationship with Pierce. On October 1, 2014, the Bank wrote to Denis Pierce, partner and managing attorney, addressing the claims of negligence, breach of contract, and breach of fiduciary duty. On December 30, 2014, Pierce responded to the Bank's letter, denying wrongdoing.

## LEGAL STANDARD

A complaint must contain factual matter sufficient to state a claim that is plausible on its face to survive a 12(b)(6) challenge. Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible on its face when the complaint contains factual content that supports a reasonable inference that the defendant is liable for the harm. *Id.* The complaint should be dismissed only if the plaintiffs would not be entitled to relief under any set of facts that could be proved consistent with the allegations. *See Visiting Nurses Ass'n of Southwestern Indiana, Inc. v. Shalala*, 213 F.3d 352, 354 (7th Cir. 2000). In making the plausibility determination, the Court relies on its "judicial experience and common sense." *Iqbal,* 556 U.S. at 678. If the factual allegations are well-pleaded, the Court assumes their veracity and then proceeds to determine whether they plausibly give rise to relief. *Id.* at 679. Further, in order to allege fraud, a party must state the particular circumstances constituting fraud pursuant to Rule 9(b). Fed. R. Civ. P. 9(b). For the purposes of this motion, the Court accepts as true all well-pleaded allegations in the First Amended Complaint and draws all reasonable inferences in the non-movant's favor. *See id.* at 678; *Killingsworth v. HSBC Bank,* 507 F.3d 614, 618 (7th Cir.2007); *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013).

## DISCUSSION

Pierce moves to dismiss each count in the Bank's Amended Complaint. Pierce argues that the Bank does not establish sufficient but-for causation to state a claim for legal malpractice. Pierce also argues that the claims are time barred. Regarding the claims to legal malpractice and breach of fiduciary duty, Pierce also alleges that the claims are duplicative and therefore should

be dismissed. Further, Pierce alleges that the Bank's fraud claims do not sufficiently state a claim given the heightened pleading standard under Federal Rule of Civil Procedure 9(b). [30]

*Counts I & II – Professional Negligence, or Breach of Contract in the Alternative*

Pierce asserts that the Bank fails to allege the causation necessary to make a *prima facie* legal malpractice showing. To state a claim for legal malpractice in Illinois, a plaintiff must plead: (1) an attorney-client relationship that establishes the attorney's duty, (2) a negligent act or omission breaching that duty, (3) proximate cause establishing that "but for" the attorney's malpractice the plaintiff would have prevailed in the underlying action, and (4) actual damages. *Rocha v. Rudd*, 826 F.3d 905, 909 (7th Cir. 2016). Once an attorney-client relationship forms, the attorney owes the client a duty of fidelity, honesty, loyalty, and good faith. ILCS S.Ct. Rules of Prof. Conduct Rule 1.7. Legal malpractice claims must meet a notice pleading standard. *Hefferman v. Bass*, 467 F.3d 596, 598-600 (7th Cir. 2006) (holding a notice pleading standard in federal courts for an Illinois legal malpractice claim because the Federal Rules of Civil Procedure apply). In a case where the underlying cause of action remained viable after the client discharged the attorney, the plaintiff "can prove no set of facts which connect [the attorney's] conduct with any damage sustained by plaintiff." *Rocha*, 826 F.3d at 909-10 (quoting *Mitchell v. Schain, Fursel, & Burney, Ltd.*, 266 Ill.Dec. 122, 124, 773 N.E.2d 1192, 1194 (quotation marks omitted)) (affirmed dismissal of claims to legal malpractice, breach of contract, breach of fiduciary duty, and fraud where underlying claims were still viable when defendant attorneys were discharged). *Id.* If a plaintiff shows legal malpractice, he may recover damages resulting from subsequent attorneys' fees. *Nettleton v. Stogsdill*, 387 Ill.App.3d 743, 749, 899 N.E.2d 1252, 1258, 326 Ill.Dec. 601, 607 (2008).

The Bank ultimately settled and corrected the Adam, Kovin, and Manzo matters. After Adam re-opened his bankruptcy case and sought an Order of Civil Contempt against the Bank and Pierce in January 2014, the Bank retained separate counsel and ultimately settled the Civil Contempt Proceeding. (Dkt. 24, at 6-7, ¶ 31-35.) Similarly, in the Kovin matter, the Bank retained subsequent counsel who filed a motion for leave to answer affirmative defenses, obtain a new scheduling order, and file a new affidavit. Ultimately, the Bank was able to settle. (*Id.* at 10, ¶ 68-71.) In the Manzo matter, new counsel corrected the error in the deed from the Sheriff and recorded the deed. (*Id.* at 13, ¶ 100.) In other words, Pierce's actions did not prove fatal to the Bank's cases. Cases that remain viable after the client discharges the initial attorneys cannot show the causation necessary to state a claim for legal malpractice, or alternatively breach of contract. *See Rocha*, 826 F.3d at 909-10 (citations omitted). Because the Bank settled these matters after it discharged Pierce, the Bank cannot show the requisite causation to state a legal malpractice or breach of contract claim in these matters, and they are dismissed.

However, construing the facts in light most favorable to the plaintiff, the Jasinski, Richters, and Urbieta matters were not or could not be saved. In these, the Bank establishes the existence of an attorney-client relationship with Pierce. (Dkt. 24, 4-5, ¶¶ 12-19.) Accordingly, Pierce owed the Bank a duty of fidelity, honesty, loyalty, and good faith. *See* ILCS S.Ct. Rules of Prof. Conduct Rule 1.7. In the Jasinski matter, Pierce filed more than two voluntary dismissals. (*Id.* at 7-8, ¶ 39-49.) Subsequent counsel attempted to vacate Pierce's voluntary dismissal of Case No. 12 L 6848 and reinstate the claim, but did not succeed. (*Id.* at 9, ¶52.) It is plausible that the Bank's claim against Jasinski did not succeed because it was no longer viable after Pierce filed multiple voluntary dismissals. *See* 735 ILCS 5/13-217. Because the underlying claim may not have been viable at the point when the Bank discharged Pierce and retained

subsequent counsel, the Bank plausibly states that Pierce caused the Bank to lose the value of the underlying matter, in addition to incurring costs from subsequent counsel's attorney fees and additional court fees. *See Rocha*, 826 F.3d at 909. Accordingly, the Bank plausibly states a legal malpractice claim against the Bank in the Jasinski matter.

Further, the facts in the light most favorable to the plaintiff do not clearly show that the Richters and Urbieta matters maintained their viability at the point of Pierce's discharge. The Amended Complaint does not indicate that either matter could have been settled or corrected. (*See* Dkt. 24, at 11-13, ¶¶ 75-94.) Because clients in both matters had filed for bankruptcy and discharge, it is unclear whether their claims would have been viable notwithstanding Pierce's actions. If they were no longer viable, the Bank could still potentially state a claim. *See Rocha*, 826 F.3d at 909. If a cause of action is not viable when a client discharges an attorney, the question of whether the attorney's actions proximately caused the client's injuries remains a fact question. *See id.*; *see e.g., Nettleton*, 387 Ill.App.3d at 753. The Bank alleges that because of Pierce's errors it needed to hire subsequent counsel to vacate the judgments obtained by Pierce, obtain dismissal of the suits, and record the release of memoranda of judgment, incurring costs that it would not have otherwise had but for Pierce's conduct. Because the underlying claims may not have been viable at the point when the Bank discharged Pierce, and the Bank alleges damages stemming from these errors, the Bank states a plausible legal malpractice claim against Pierce for the Richters and Urbieta matters.

Pierce argues that these counts are time barred because the Bank retained Pierce in 2009 and vaguely pleads the timeline regarding when it learned about Pierce's conduct. [30] However, statutes of limitations are an affirmative defense. Plaintiffs need not allege the timeliness of their suit to state a claim. *See* Fed. R. Civ. P. 8(c)(1); *Barry Aviation Inc. v. Land O'Lakes Mun.*

11

*Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004) (citing *U.S. Gypsum Co. v. Indiana Gas Co., Inc.*, 350 F.3d 623, 626 (7th Cir. 2003)). Given that the claims are not time barred on the face of the Amended Complaint, the Court need not rule on their timeliness at this time.

### *Count III – Breach of Fiduciary Duty*

The Bank separately alleges a breach of fiduciary claim against Pierce in the matters of Nielsen, Rinaldi, and the Allegrettis. In each matter, the Bank retained subsequent counsel to represent it in the matters going forward after discharging Pierce. In the Nielsen matter, the Bank "[paid] new counsel to obtain judgment in Case No. 13 AR 551." (Dkt. 24, at 15, ¶ 113.) In the Rinaldi and Allegretti matters against Deutsche Bank, Webster Bank paid new counsel to handle Cases No. 13 CH 7225 and 13 L 576, respectively. (*Id.* at 16-17, ¶ 124, 139.) Regardless of whether this claim impermissibly duplicates the Bank's legal practice allegations, as the Defendants argue [30], the same principle in *Rocha* applied to breach of fiduciary duty claims as to legal malpractice claims: if the underlying cause of action remains viable at the point that a client discharges its attorney, the plaintiff "can prove no set of facts which connect [the attorney's] conduct with any damage sustained by plaintiff." *Rocha*, 826 F.3d at 909-10 (citations omitted). As the Bank itself pleads, it hired new counsel to continue to pursue the claims. Accordingly, whether pled as breach of fiduciary duty or legal malpractice, the Bank cannot state a claim to these matters under *Rocha*. The Bank's Count III claims against Nielsen, Rinaldi, and the Allegrettis are therefore dismissed.

### *Count IV – Fraud*

To allege fraudulent misrepresentation under Illinois law, a plaintiff must show that: (1) the defendant made a false statement of material fact; (2) the plaintiff reasonably relied on the statement; (3) the defendant intended to induce reliance; (4) the plaintiff in fact relied on the

statement; and (5) the plaintiff suffered injury as a direct result. *See e.g.*, *Petrakopoulou v. DHR Intern., Inc.*, 660 F.Supp.2d 935, 937 (N.D.Ill. 2009) (citing *Trustees of AFTRA Health Fund v. Biondi*, 303 F.3d 765, 777 n.10 (7th Cir. 2002). To allege fraud, "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To meet the particularity requirement, plaintiffs must plead the "who, what, when, where, and how" of the alleged fraud. *Rocha*, 826 F.3d at 911 (quoting *United States ex rel. Lusby v. Rolls–Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009)) (internal quotation marks omitted). Specifically, the complaint must allege "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Id.* (quoting *Uni*Quality Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992)) (internal quotation marks omitted) (dismissing the claim for failing to allege the "specific names, dates, times, or content of the misrepresentations or omissions").

The Bank alleges that Pierce "knew" it had a conflict of interest in the Nielsen, Rinaldi, and Allegretti matters; that failure to disclose would give the false impression that Defendant did not have a conflict of interest; that such an omission would induce Plaintiff to continue in its attorney-client relationship; and that Defendant "intentionally omitted" this information from the Bank. (Dkt. 24, at 26, ¶¶191-194.) However, the Bank states this in conclusory fashion without providing facts to allege that anyone at Pierce was aware of the conflict and purposefully withheld this information so that the Bank would continue to retain Pierce as counsel. (*See id.* at 14-18, ¶¶ 104-140.) The Bank does not include facts about who, or at what point, Pierce knew or would have known that it simultaneously represented both the Bank and other clients on the same matters. Nor does the Bank allege when and how Pierce conveyed statements to the Bank that provided grounds for inferring that Pierce intended to induce the Bank's reliance. The Bank

13

recites the elements of a claim for fraud as conclusory statements without providing facts sufficient to meet this heightened notice standard. *See Rocha*, 826 F.3d at 911 (citations omitted). Accordingly, the Bank fails to state a claim against Pierce for fraud in the Nielsen, Rinaldi, and Allegretti matters. Pierce's motion to dismiss Count IV is granted.

## CONCLUSION

For the reasons set forth above, this Court grants Pierce's Motion to Dismiss with prejudice regarding Counts I and II (Legal Malpractice or Breach of Contract) in Adam, Kovin, and Manzo matters and Count III (Breach of Fiduciary Duty) in the Nielsen, Rinaldi, and Allegretti matters pursuant to Rule 12(b)(6). *See* Fed. R. Civ. P. Rule 12(b)(6). The Court also grants Pierce's Motion to Dismiss without prejudice regarding the Count IV (Fraud) claims in the Nielsen, Rinaldi, and Allegretti matters pursuant to the particularity requirement in Rule 9. *See* Fed. R. Civ. P. Rule 9(b). This Court denies Pierce's Motion to Dismiss for Counts I and II in the Jasinski, Richters, and Urbieta matters.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 10/18/2016