**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| WEBSTER BANK, N.A, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 16 C 2522 |
| | ) | |
| v. | ) | Judge Virginia M. Kendall |
| | ) | |
| PIERCE & ASSOCIATES, P.C., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Currently before the Court are (1) Plaintiff Webster Bank, N.A.'s motion to reconsider the Court's April 19, 2017 ruling denying Plaintiff's motion to compel the production of two documents from Defendant Pierce & Associates, P.C. as work product (Dkt. 85); (2) Plaintiff's motion to enforce the Court's July 13, 2017 order (Dkt. 87); and Plaintiff's objections to Magistrate Judge Gilbert's order granting Defendant's motion to compel certain discovery from Plaintiff (Dkt. 117). In response to Plaintiff's motion to enforce, Defendant has submitted a combined response and motion for reconsideration of the Court's July 13 Order. (Dkt. 89). Defendant did not notice or present this "motion" pursuant to the local rules, *see* N.D. Ill. L. R. 5.3. Nevertheless, for the reasons stated below, the Court rules as follows: Plaintiff's motion to reconsider (Dkt. 85) is granted. The Court also grants Defendant's motion to reconsider (Dkt. 89) as to privileged materials or statements in its submission to the Attorney Registration & Disciplinary Commission, but otherwise denies the motion; the Court denies Plaintiff's motion to enforce (Dkt. 87) as moot. Finally, Plaintiff's objections (Dkt. 117) to the magistrate judge's ruling are overruled. In connection with this ruling, fact discovery in this case is extended to March 9, 2018. The case is set for status on March 12, 2018 at 9:00 a.m.

<u>**BACKGROUND**</u>

As relevant here, Plaintiff Webster Bank, N.A. ("Plaintiff" or the "Bank") has asserted claims of professional negligence and breach of contract against Defendant Pierce & Associates, P.C. ("Defendant" or "Pierce") regarding Defendant's handling of three Illinois state court breach-of-promissory-note actions against Bank client Kristen Jasinksi, *Webster Bank v. Jasinski* ("*Jasinksi*") ((Case Nos. 10 L 1972, 12 L 6848, & 13 L 10056). (Dkt. 24). Specifically, after Jasinski defaulted on note payments, Defendant filed Case No. 10 L 1972 against her on Plaintiff's behalf and later dismissed it voluntarily. Defendant then filed Case No. 12 L 6848, but failed to appear in court on a scheduled date; the court dismissed the case for want of prosecution. Defendant successfully moved to vacate the dismissal, but then moved to voluntarily dismiss it again, which the court granted. Defendant later filed Case No. 13 L 10056. Jasinski moved to dismiss the third case on the grounds that 735 ILCS 5/13-217 does not allow a party to file a third cause of action after voluntarily dismissing the same action twice. Plaintiff claims that Defendant failed to notify it about the dismissal of Case No. 12 L 6848 and the implications of filing Case No. 13 L 10056. Plaintiff then fired Defendant and retained separate counsel—Thompson Coburn LLP, who represents Plaintiff in this action. Thompson Coburn appeared in the second and third *Jasinski* matters. It attempted to vacate Defendant's voluntary dismissal of Case No. 12 L 6848 but was unsuccessful, and Case No. 13 L 10056 was dismissed with prejudice pursuant to the application of the Single Refiling Rule. *See* (Dkt. 108-1) (Opinion and Order denying motion to vacate voluntary dismissal in 12 L 6848), (Dkt. 108-2) (Opinion and Order granting motion to dismiss in 13 L 10056). Plaintiff then sued Defendant in this Court and initiated a complaint against Defendant with the Illinois Attorney Registration & Disciplinary Commission ("ARDC"). *See* (Dkt. 68) at ¶ 4. Following motion to dismiss

briefing, Defendant answered and asserted three affirmative defenses, including contributory negligence.  (Dkt. 53) at 50–51.

## PLAINTIFF'S MOTIONS TO COMPEL & ENFORCE

As part of discovery in this case, Plaintiff served its First Requests for Production on December 30, 2016.  Among other documents, Plaintiff sought: "All Documents submitted to the ARDC by Defendant as part of the claim filed by Webster."  (Dkt. 68) at ¶ 4; *see also* (Dkt. 68-1) at ¶ 48.  On January 31, 2017, Defendant declined to provide these documents in part, claiming that such information is "confidential" and "disclosure [of which] would violate Illinois Supreme Court Rule 766."  (Dkt. 68-1) at ¶ 48.  Defendant produced other documents and a very brief privilege log, on which Defendant listed two documents that it was withholding as protected work product: (1) an April 24, 2014 e-mail from Pierce litigation attorney Brian Merfeld ("Merfeld") to Pierce managing attorney Lee Perres ("Perres") regarding "dismissal of *Jasinski* matters discussing whether to create memo," and (2) an April 25, 2014 "abstract/memo" by Merfeld "concerning dismissal of *Jasinski* matters."  (Dkt. 68) at ¶¶ 5–6; (Dkt. 68-2).  After their informal attempts to resolve the disputes concerning the ARDC documents and the privilege-log documents failed, on April 11, 2017, Plaintiff moved to compel.  *See* (Dkt. 68).

On April 19, 2017, after hearing oral argument and reviewing the e-mail and memorandum *in camera*, the Court ruled that the memorandum constituted protected work product and that Defendant should provide a redacted version of the e-mail to Plaintiff.  (Dkt. 92-1) (Tr. of April 19, 2017 Proceedings) at 16–18.  The Court ruled on the other aspect of Plaintiff's motion to compel—the ARDC documents—on July 13, 2017, finding that Illinois Supreme Court Rule 766 did not privilege Defendant's submissions, nor preclude the Court from ordering their disclosure.  (Dkt. 82).

Plaintiff now moves for reconsideration of the Court's April 19 Ruling on the e-mail and memorandum after taking Perres' deposition on June 30, 2017. (Dkt. 85) at 3, ¶ 5. Plaintiff also moves to enforce the Court's July 13 Order compelling Defendant's ARDC submission materials due to Defendant's noncompliance (Dkt. 87), to which Defendant responded and also moved the Court to reconsider the July 13 Order. (Dkt. 89).

### A. Legal Standard

Federal Rule of Civil Rule 54(b) provides that non-final orders "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Thus, the Court has the "discretionary authority" to reconsider an interlocutory order. *Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012); *see also Chicago Reg'l Council of Carpenters v. Prate Installations, Inc.*, 2011 WL 2469820, at *1 (N.D. Ill. June 20, 2011) ("under Rule 54(b), the Court may exercise its inherent authority to reconsider its interlocutory orders because the Court may revise such orders at any time before entering final judgment") (citing *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 12 (1983)). But a motion to reconsider is not a proper vehicle for rehashing arguments that the Court previously rejected or for introducing new legal theories. *See Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996); *see, e.g.*, *Janusz v. City of Chicago*, 78 F. Supp. 3d 782, 787 (N.D. Ill. 2015). Instead, motions for reconsideration under Rule 54(b) serve the limited function of correcting manifest errors of law or fact or to presenting newly discovered evidence." *Patrick v. City of Chicago*, 103 F. Supp. 3d 907, 911–12 (N.D. Ill. 2015). A motion based on newly discovered evidence should demonstrate that the evidence was unknown until after the hearing and the moving party could not have discovered and produced such evidence with reasonable diligence before the court's earlier decision. *Caisse Nationale de Credit*

*Agricole*, 90 F.3d at 1269. Courts may grant motions to reconsider "where there has been a controlling or significant change in the facts of the case." *Caine v. Burge*, 897 F. Supp. 2d 714, 716–17 (N.D. Ill. 2012).

As an additional point, if a party fails to obey a court's order to provide or permit discovery, the court may issue further just orders pursuant to Federal Rule of Civil Procedure 37, including directing the disobedient party to embrace the earlier order. Fed. R. Civ. P. 37(2)(a).

### B. Discussion

#### 1. April 2014 E-mail and Memorandum

Plaintiff argues that new facts discovered during the June 30, 2017 Perres deposition warrant reconsideration of the Court's ruling concerning the work-product protection for Defendant's privilege-log documents. According to Plaintiff, Perres's deposition, which was given in both his personal capacity and in his capacity as a corporate witness, revealed the following. While Defendant was representing Plaintiff and after the motion to dismiss was filed in the third *Jasinski* matter, Merfeld (who previously had not been assigned to the *Jasinksi* matters, but who apparently had a working knowledge of the cases) and Perres casually spoke about the matter in the hallway; after the discussion, Perres asked Merfeld to review and summarize the *Jasinski* file. Specifically, Perres said, "[P]repare a memo on this so we have it. You know, dig into it and tell me what you find." (Dkt. 85-1) (L. Perres Dep.) at 167:4–6. When asked about his purpose in directing Merfeld to memorialize these thoughts in writing, Perres explained, "On cases like that—where we've had this, it's easier for me to deal with it in terms of having something in writing. It's just easier for me to manage a case flow. Then I have something I can either give to another attorney or use to discuss with the other attorneys in the office. I try not to rely on my memory on things like this." *Id*. at 167:9–16. With that, Merfeld

authored the two documents at issue. Asked whether Perres anticipated whether Plaintiff would sue Defendant, Perres replied, "I never anticipated it. Why would I? I didn't anticipate it at all." *Id*. at 172:9–14. Asked specifically (by his own counsel) whether he contemplated litigation at the time, Perres again stated that he was not anticipating this suit at that time, although he also stated: "I never rule out litigation. Anything is possible." *Id.* at 300:23–301:4. Asked if there was at least the "possibility of litigation," Perres replied, "Yes. You know – yeah. When you get a motion to dismiss for that basis you want to get your ducks in a row." *Id.* at 301:6–11.

Unlike attorney-client privilege, federal law governs work-product doctrine. *See, e.g.*, *FDIC v. Lowis & Gellen LLP*, 2014 WL 656660, at *3 (N.D. Ill. Feb. 20, 2014) (citing *Lyon Fin. Servs., Inc. v. Vogler Law Firm, P.C.*, 2011 WL 3880948, at *4 (S.D. Ill. Sept. 2, 2011)); *Sullivan v. Alcatel-Lucent USA, Inc.*, 2013 WL 2637936, at *10 (N.D. Ill. June 12, 2013) (citing *Stopka v. Am. Family Mut. Ins. Co., Inc.*, 816 F. Supp. 2d 516, 524 (N.D. Ill. 2011)) ("federal work-product doctrine applies in diversity cases"). "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney . . . )." Fed. R. Civ. P. 26(b)(3)(A); *see also Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010). The rule serves twin purposes: to protect attorneys' thought processes and mental impressions against disclosure and to limit circumstances where attorneys wait until their more diligent colleagues do the homework only to borrow and copy from it when finished. *Sandra T.E.*, 600 F.3d at 621–22; *see also Appleton Papers, Inc. v. E.P.A.*, 702 F.3d 1018, 1022 (7th Cir. 2012) (the work-product doctrine promotes the adversary system directly by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation). To this end, Rule 26 also requires courts that allow discovery of such materials to protect against

disclosure of attorneys' mental impressions, conclusions, opinions, or legal theories concerning the litigation in which the party seeks discovery. Fed. R. Civ. P. 26(b)(3)(B).

To determine whether the work-product doctrine protects the documents in question, courts look to whether, in light of the factual context, "the document[s] can fairly be said to have been prepared or obtained because of the prospect of litigation." *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 976–77 (7th Cir. 1996) (internal quotations and citations omitted) (emphasis omitted). Courts distinguish between documents developed "in the ordinary course of business" for the "remote prospect of litigation" and documents prepared because an "articulable claim" that is "likely to lead to litigation" has arisen. *Sandra T.E.*, 600 F.3d at 622 (citing *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1120 (7th Cir. 1983)) (internal quotation marks omitted) (finding work-product doctrine protected materials where party made documents after and in response to the actual filing of the lawsuit at hand). "It is only work done in anticipation of or for trial that is protected. Even if prepared by lawyers and reflecting legal thinking, '[m]aterials assembled in the ordinary course of business . . . or for other nonlitigation purposes are not under the qualified immunity provided by the doctrine' and Fed. R. Civ. P. 26." *Towne Place Condo. Ass'n v. Philadelphia Indem. Ins. Co.*, 2018 WL 360540, at *7 (N.D. Ill. Jan. 11, 2018) (citation omitted). To determine whether a document would have been created in the normal course of business and thus is not entitled to work-product protection, courts look to whether the documents would have been produced "regardless of whether litigation was anticipated or not" in the matter at hand. *See, e.g.*, *Urban Outfitters, Inc. v. DPIC Cos., Inc.*, 203 F.R.D. 376, 379 (N.D. Ill. 2001) (citing *Caremark, Inc. v. Affiliated Computer Serv. Inc.*, 195 F.R.D. 610, 616 (N.D. Ill. 2000)).

Rule 26 refers generally to the "anticipation of litigation" without specifying to which litigation the Rule refers in the context of a legal malpractice case where two types of litigation come into play: the current legal malpractice claim, and the earlier underlying litigation from which the legal malpractice claim arises. The case law makes clear that work-product doctrine protects parties from sharing their materials developed for the present case, but not necessarily for an earlier matter. This is because "the purpose of [work-product] privilege is to hide internal litigation preparations *from adverse parties*." *Menasha Corp. v. U.S. Dept. of Justice*, 707 F.3d 846, 847 (7th Cir. 2013) (emphasis added). However, in a situation such as that presented here, where the underlying and present litigation are related, the doctrine still applies. *See Federal Trade Comm'n v. Grolier*, 462 U.S. 19, 25 (1983) ("[T]he literal language of the Rule protects materials prepared for *any* litigation or trial as long as they were prepared by or for a party to the subsequent litigation.") (emphasis in original); *Hobley v. Burge*, 433 F.3d 946, 949 (7th Cir. 2006) (work product protection "endures after termination of the proceedings for which the documents were created, especially if the old and new matters are related"); *see also Menasha Corp.*, 707 F.3d at 851 (discussing hypothetical where materials created by counsel in underlying matter were work product protected from discovery in subsequent medical malpractice suit). Ultimately, the party claiming protection from the work-product doctrine has the burden of showing that it applies. *See, e.g.*, *Sullivan*, 2013 WL 2637936, at *9 (citation omitted).

Defendant continues to argue that the April 2014 e-mail and memorandum were created in anticipation of litigation. But Perres' admissions, which he gave after the parties already had litigated this exact issue of whether the two documents could be withheld from production, directly undercut that argument. Specifically, Perres' testimony reveals that Defendant's employees (who were attorneys) created these two documents to analyze the *Jasinski* litigation

and to "manage case flow" for the firm—not for use in the *Jasinski* matter and not in anticipation of the present legal malpractice matter. *See Sandra T.E.*, 600 F.3d at 622.

Defendant argues that Perres' testimony highlighted by Plaintiff is "selective" and taken "out of context," and that the Court must "consider the entirety of the deposition testimony" attached to Plaintiff's motion. *See* (Dkt. 91) at 1–2. The entire 16-page deposition transcript excerpt, however, is consistent with the finding that the email and memo at issue were not created in anticipation of either litigation. First, Defendant's argument that Plaintiff did not ask for the memo and Defendant did not bill Plaintiff for the memo (*id*. at 2) supports the conclusion that these documents were not created for use in the then-ongoing *Jasinski* matters. Second, Defendant's argues that the "dual purpose test" should apply—that is, the notion that a document prepared to assist with a business decision may also be protected work product where the document also can be said to have been prepared "because of" the prospect of litigation—does not serve to bring these documents under the protection for the current litigation. *Id*. at 3. For one thing, in support of this argument, Defendant cites only out-of-circuit caselaw; the Seventh Circuit, by comparison, takes an extremely narrow view of this concept, allowing "dual purpose" documents to be protected as work product only if the "primary motivating purpose" behind their creation is to aid in future litigation. *See Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1118–1119 (7th Cir. 1983) (citing *Janicker v. George Wash. Univ.*, 94 F.R.D. 648, 650 (D.D.C. 1982)) (document prepared in investigation of accident not work product unless it is shown that, in light of the surrounding events, the primary motivating purpose for its creation was because of litigation as opposed to ordinary business need to investigate); *see also United States v. Frederick*, 182 F.3d 496, 501 (7th Cir. 1999) (holding that "a dual-purpose document—

a document prepared for use in preparing tax returns and for use in litigation—is not privileged").

Here, Perres' testimony does not support the conclusion that the primary motivating purpose behind the creation of email and memo was the prospect of possible litigation. Even still, Defendant argues that Perres' statement that "[w]hen you get a motion to dismiss for that basis you want to get your ducks in a row" implies that the memo was created because Defendant believed litigation could result. The highlighted testimony, however, not only is incredibly vague and was not clarified by further questioning contained in the excerpt provided to the Court, it also is undermined by Perres' other statements that he "never anticipated" that Plaintiff would initiate litigation against Defendant. And in any event, the closest Perres' statement brings the documents into the analysis is as "precautionary documents" developed in the ordinary course of business for the remote prospect of litigation, which is not enough to apply the protection. *Sandra T.E.*, 600 F.3d at 622.

Given these new admissions, and recalling the Court's *in camera* inspection of the documents, Defendant has not met its burden to show that the work-product doctrine applies to the April 2014 e-mail and memorandum. Even though the memo and email were prepared by lawyers and reflect legal thinking, the testimony from Defendant's employee and corporate representative indicates that they were not prepared with the primary motivating purpose of aiding in possible future litigation. *Towne Place Condo. Ass'n*, 2018 WL 360540, at *7. Rather, Perres articulated the opposite. Accordingly, the Court grants Plaintiff's motion to reconsider.

### 2. Pierce's ARDC Submission

With regard to the remainder of Plaintiff's motion to compel, Plaintiff asks the Court to enforce its July 13, 2017 order (Dkt. 82) compelling production of the materials Defendant

submitted to the ARDC. (Dkt. 87). At the same time, Defendant asks the Court to reconsider its order. (Dkt. 89). In asking for reconsideration, Defendant does not point to new facts or law, but rather argues that the Court made a manifest error of law in its interpretation of the rules guiding the ARDC process and misapplied the relevant caselaw. (Dkt. 89) at 2–7.

In its earlier opinion, the Court was well aware that ARDC proceedings involve both private and public components. Defendant frames this as "private investigations and public findings," as if the Rule cleanly bifurcates the proceedings into a two-step process where cases begin privately and, depending on the outcome, end publicly. *Id.* at 2. Defendant tries to use Illinois Supreme Court Rule 766 and *Janopoulos v. Harvey L. Wainer & Associations, Ltd.*, 1994 WL 61801 (N.D. Ill. Feb. 17, 1994), to educate the Court on this issue, but these sources do not so distinguish. As *Janopoulos* points out, Rule 766 provides that attorney disciplinary proceedings "shall be public with the exception" of certain private and confidential investigations, proceedings, and deliberations. *See* Ill. S. Ct. R. 766(a); *e.g.*, *Janopoulos*, 1994 WL 61801, at *3. In other words, Rule 766 sets the default nature of the proceedings as public and carves out specific exceptions to keep private—a list that does not include submissions made to the ARDC.

Defendant further claims that "only the Administrator may . . . allow the private portion of an investigation to be made public," but then immediately counters this statement in the same paragraph, stating that this issue "can only be adjudicated by the Administrator and the Illinois Supreme Court," swiftly followed by concluding that "only the Illinois Supreme Court may order disclosure" of submission materials. (Dkt. 89) at 2–3. Defendant's revisions, or confusion, underscore the multiple, non-exclusive routes to make otherwise private ARDC materials public. Notwithstanding that Defendant's argument assumes its submission to be private in the first

place—a contention with which this Court does not agree—the Court echoes its earlier construction of Rule 766. The Rule permits the Illinois Supreme Court, and the ARDC Administrator with the approval of the court, to authorize public disclosures. *See* Ill. S. Ct. R. 766(b). Nowhere does the Rule deem these the "only" routes for public disclosure. Nor does Rule 766 preclude additional routes, for example this Court's authorizing such a disclosure in the interest of justice. The Rule even allows referrals to lawyers' assistance programs without specifying who—the Administrator, the court or a member thereof, or otherwise—would authorize such a disclosure. Taken together, these provisions do not allow the Court to draw the conclusion that Defendant urges. Rule 766 outlines particular paths for disclosure but, at least as written, does not foreclose others. Regardless, the materials submitted to the ARDC by Defendant do not fall into one of the categories of private exceptions enumerated by Rule 766.

That said, the attorney-client privilege and the work-product doctrine may apply to Defendant's letter and/or some of the other materials submitted to the ARDC. *See* Fed. R. Civ. P. 26(b)(3)(B). To keep the litigation moving forwards, at this time the Court declines to review individual documents that Defendant has submitted and instead trusts that Defendant can do its work in good faith to redact and/or log privileged materials that have been developed in the course of this litigation. Defendant must so disclose the remainder of its ARDC submission to Plaintiff, with the understanding that the Court has the authority to order further consequences for delays or non-compliance pursuant to Rule 37. *See* Fed. R. Civ. P. 37(2)(a).

For these reasons, the Court grants Defendant's motion to reconsider to the extent that it pertains to any privileged materials or statements in its submission to the ARDC, and otherwise denies the motion. (Dkt. 89). In light of this, the Court denies Plaintiff's motion to enforce (Dkt. 87) to first afford Defendant the opportunity to comply given this order.

## DEFENDANT'S MOTION TO COMPEL

Defendant filed its own motion to compel in June 2017, which sought production of various documents including Thompson Coburn's litigation file in the *Jasinski* case that Plaintiff claimed were privileged and/or work product.[1] (Dkt. 77). In ruling on the motion, Magistrate Judge Gilbert ordered Plaintiff to produce (1) all relevant, non-privileged documents in the file and (2) a privilege log. *See* (Dkt. 94) at 3. Plaintiff complied and identified more than 200 documents withheld from production. Following a meet-and-confer, Plaintiff produced a large portion of the identified documents and produced a revised log listing some 91 documents over which Plaintiff continued to assert privilege and/or work product protection. Defendant moved to compel, arguing that (1) the work product doctrine does not shield—in the present case—the mental impressions and litigation strategies of Thompson Coburn in the underlying *Jasinski* matters, (2) Plaintiff's action in filing this case (along with Defendant's affirmative defenses) waived the attorney-client privilege and work product-protection by putting causation at issue, and (3) Plaintiff's revised privilege log is deficient and does not support Plaintiff's claims of privilege or work product protection. Defendant's motion rests heavily on its argument that Thompson Coburn failed to make a potentially successful argument to the *Jasinski* court (that the Single Refiling Rule does not apply to promissory notes on subsequent failures to pay) and engaged in other possibly harmful actions and arguments, which could have caused or contributed to the unenforceability of the Jasinski note. *See* (Dkt. 105), (Dkt. 108).

The magistrate judge granted Defendant's motion to compel on the record on November 7, 2017. First, the magistrate judge concluded that Plaintiff waived the attorney-client privilege by filing this malpractice action and putting at issue the question of whether Defendant's conduct

---

[1] The documents submitted by the parties indicate that the request for *Jasinski* file documents was made to Plaintiff (*see* (Dkt. 77-1) at ¶ 5), not by way of a subpoena under Fed. R. Civ. P. 45 to Thompson Coburn.

caused the damage alleged, particularly because Defendant argues that the *Jasinski* matters were not concluded and may not have been extinguished at the time Thompson Coburn began representing Plaintiff as successor counsel. *See* (Dkt. 122) (Tr. of Nov. 7, 2017 Proceedings) at 9. In connection with this holding, the magistrate judge found Plaintiff's revised privilege log to vaguely describe the withheld documents, which only further supported the production of such documents. *Id*. at 11. The magistrate judge further found the Illinois Supreme Court's decision in *Fischel & Kahn, Ltd. v. van Straaten Gallery, Inc.*, 189 Ill. 2d 579 (2000), a case highlighted by Plaintiff, to be factually distinguishable because that case involved allegations concerning legal malpractice that were complete by the time successor counsel was retained, instead of a situation where multiple lawyers were handling the same matter simultaneously and all may have contributed to the alleged malpractice. *Id*. at 19–20. Next, the magistrate judge rejected Defendant's argument that the work-product protection does not extend to subsequent litigation, stating that "the protection extends to other litigation as long as the materials originally were prepared in anticipation of litigation in a different lawsuit." *Id*. at 12. However, the magistrate judge noted that the protection provided by the work-product doctrine to the documents in a different, prior litigation is "less strong," and concluded that Defendant had demonstrated a substantial need for the documents. *Id*. at 13. Plaintiff objected to the magistrate judge's order. *See* (Dkt. 117).

### A.    Legal Standard

The Court reviews a magistrate judge's order on a nondispositive pretrial matter only to determine whether the order "is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). Under this standard, the Court "can overturn the magistrate judge's ruling only if [the Court] is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung*

*Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997). Because this standard is deferential to the magistrate judge's decision, an objecting party carries a heavy burden in persuading the Court to modify the magistrate judge's ruling. *See Finwall v. City of Chicago*, 239 F.R.D. 504, 506 (N.D. Ill. 2006); *F.T.C. v. Pac. First Benefit, LLC*, 361 F. Supp. 2d 751, 754 (N.D. Ill. 2005).

**B.      Discussion**

Plaintiff argues that the magistrate judge (1) incorrectly distinguished *Fischel & Kahn*, and (2) incorrectly found that Defendant had demonstrated a substantial need for Thompson Coburn's *Jasinski* work product. The Court addresses each issue in turn.

**1.      Attorney-Client Privilege**

Because diversity of citizenship is the basis for jurisdiction in this case, Illinois law governs the determination of any waiver of the attorney-client privilege. As Plaintiff points out, the Illinois Supreme Court's analysis in *Fischel & Kahn* sets out the relevant state law principles. "[W]here legal advice of any kind is sought from a professional legal advisor in his capacity as such, the communications relating to that purpose, made in confidence by the client, are protected from disclosure by himself or the legal advisor, except the protection be waived." 189 Ill. 2d at 584. *Fischel & Khan* indicates that the scope of the privilege is broadly construed in Illinois and that the "at-issue" waiver doctrine is viewed narrowly. Under Illinois law, "at issue" waiver occurs "where a party voluntarily injects either a factual or legal issue into the case, the truthful resolution of which requires an examination of the confidential communications." *Lama v. Preskill*, 353 Ill. App. 3d 300, 305 (2d Dist. 2004). The at-issue exception permits discovery where the sought-after material is either the basis of the lawsuit or the defense thereof. *See Waste Mgmt., Inc. v. Int'l Surplus Lines Ins. Co.*, 144 Ill.2d 178, 199–200 (1991).

Plaintiff is correct in its assertion that to allow the invasion of the privilege simply because a party filed affirmative defenses to a malpractice action "would render the privilege illusory[.]" *Fischel & Kahn,* 189 Ill. 2d at 586. To implicate the waiver rule, therefore, it is not enough for an issue to be "subject to dispute" such that the privileged communication at issue "might touch on that question." *Id*. at 587. At the same time, as the magistrate judge recognized, the privilege is by no means absolute, and particular allegations raised in a malpractice claim and/or by a party's affirmative defenses theoretically could be sufficient to put causation at issue thereby triggering at-issue waiver, provided that the information sought is vital to the opposing party's theories of the case.

Although *Fischel & Kahn* provides the general framework for analyzing Plaintiff's claim of privilege, its influence ends there. In that case, Fishel & Khan—a law firm that had advised an art gallery on certain contracts—later sued the gallery for recovery of legal fees. The gallery then counterclaimed for malpractice, alleging that the firm had erroneously advised the gallery regarding the liability limiting provision of a contract that the gallery used with consignment artists in the year 1986. Fischel & Kahn then requested the files of Pope & John, a second law firm that the gallery had hired in connection with litigation involving the consignment-artist contracts following a fire at the gallery in 1989. The gallery asserted the privilege with respect to those files. Fischel & Kahn argued that the gallery had waived the privilege by filing a counterclaim and seeking damages for the defense and settlement of the fire-related litigation, thus placing the Pope & John files "at issue." *Id*. at 585. Fischel & Khan argued that all documents surrounding the fire litigation and its settlement were necessary to determine to what extent the gallery's loss resulted from the earlier, alleged 1986 contract malpractice. *Id*. The Illinois Supreme Court rejected the waiver claim. The court delineated a clear line between the

1986 representation by Fischel & Khan that led to the alleged malpractice and the later representation by Pope & John in the fire litigation, which was a separate matter despite the fact that the consignment-artists contracts were involved. Specifically, the court found that "no question exists regarding who allegedly committed the malpractice complained of." *Id.* at 588. Thus, the privileged documents of Pope & John did not go to causation—or whether Pope & John contributed to the malpractice—but rather, those documents were only relevant on the issue of damages. The court refused to invade the privilege on these grounds, because the sought after documents were not "vital to [Fischel & Khan's] defense" since it could challenge the gallery's evidence on the issue damages in other ways. *Id.*

The parties here do not enjoy the same time of clear delineation between Defendant and Thompson Coburn's representation of Plaintiff so as to neatly fit under the holding of *Fischel & Khan* as Plaintiff urges. *See* (Dkt. 117) at 7. Here, the parties do not dispute that Thompson Coburn entered appearances in the second and third *Jasinski* matters in April 2014 and was involved in those matters, which concluded in July 2014. Although Plaintiff attempts to create a break in time between the cause of the malpractice and damages by its insistence that the "unauthorized dismissal of the second *Jasinski* lawsuit" in February 2014 was the point in time when the malpractice was complete ((Dkt. 117) at 12), that view takes too narrow of an approach. Plaintiff's complaint alleges that Defendant's actions prevented it from enforcing the Jasinski promissory note and Plaintiff therefore seeks damages for the entire amount of the note (and attorneys' fees). (Dkt. 24) at ¶ 53. In response, Defendant argues that the second voluntary dismissal of the second *Jasinski* action did not necessitate the end of the proceedings against Jasinski. In other words, the parties dispute whether Plaintiff had a viable cause of action against Jasinski during the time Thompson Coburn served as counsel. Therefore, Thompson Coburn's

conduct in and its communications with Plaintiff regarding the underlying *Jasinksi* matters are at issue here in both Plaintiff's claims and Defendant's defenses. That Thompson Coburn was only involved for a few months of the proceedings does not change this result. Further, Defendant argues that the Thompson Coburn file documents relating to the strategic decision to have the second and third *Jasinski* matters heard concurrently and to raise only certain defenses in connection with those matters are important to its contributory-negligence defense. This "inquiry will involve examining decisions made at [the later] stages of the underlying litigation. This will necessarily involve information communicated between" Thompson Coburn and the Plaintiff. *Pappas v. Holloway*, 114 Wash. 2d 198, 209 (1990) (en banc) (discussed in *Fischel & Khan*; by asserting a malpractice claim against defendant-attorney, who withdrew from the underlying litigation one month before an adverse trial verdict, the plaintiff-clients waived the attorney-client privilege covering their communications with "all the attorneys who were involved in defending the [the plaintiff-clients] in the underlying litigation" particularly where defendant attorney had shown that the information sought was vital to defense).

The situation faced here is analogous to that in that *Lyon Financial Services, Inc. v. Vogler Law Firm, P.C.*, 2011 WL 3880948, at *4 (S.D. Ill. Sept. 2, 2011) and *London v. Johnson & Bell, Ltd.*, 2012 WL 4892852 (N.D. Ill. Oct. 10, 2012), despite Plaintiff's efforts to distinguish those cases. In *Lyon*, the law firm defendant in a legal malpractice action sought production of attorney-client communications and work product between Lyon and subsequent counsel and between Lyon and appellate counsel. There, Lyon had hired subsequent counsel to represent it at trial after alleged professional misconduct during discovery by the defendant firm. Following an unfavorable jury verdict, the plaintiff hired a third firm to assist with an appeal and the case settled while the appeal was pending. *Lyon*, 2011 WL 3880948, at *1. Lyon argued that a

waiver was precluded because defendants' alleged malpractice occurred "prior to and independently from" subsequent counsel's representation. *Id*. at *3. The court rejected these arguments, finding that Lyon put the communications at issue because (i) it sought damages for the amount of the verdict rendered after defendants were terminated, (ii) it implicitly argued that the effects of defendants' malpractice "continued beyond the duration of [d]efendants' representation," and (iii) "the specific party, if any, that caused Lyon's trial loss remain[ed] unresolved." *Id*. The court also found that, absent production of the attorney-client communications, defendants "would be effectively precluded from challenging the causation and actual damages prongs for legal malpractice." *Id*. Fairness required that the defendant firm be able to seek discovery vital to its defenses. *Id*.

Similarly, in *London*, the defendant law firm in a legal malpractice action subpoenaed documents from a law firm that replaced it in the underlying litigation. *London*, 2012 WL 4892852, at *1. The plaintiff there claimed that the defendant firm had failed to timely assert a valid defense, which resulted in a procedural forfeiture. However, the evidence developed to that point also indicated that subsequent counsel waited eight months to assert the defense, and so the defendant firm argued that the subsequent firm could have contributed to the alleged malpractice. The court therefore found that the plaintiff had placed the conduct and communications of the subsequent firm at issue in the case and refused to quash the subpoena for the requested documents. *Id*. at *2. The same result prevails here. It would not be fair to allow Plaintiff to claim that Defendant is liable for the entirety of its damages while precluding discovery of contrary evidence.

In sum, the magistrate judge did not clearly err in finding *Fischel & Khan* distinguishable from present circumstances and holding that Plaintiff had waived the attorney-client privilege

over its communications contained in Thompson Coburn's *Jasinski* file by placing them at issue in this suit and that Defendant had demonstrating a need for such documents in support of its defenses. . *Lyon*, 2011 WL 3880948, at *4. Plaintiff is directed to produce the documents identified on its privilege log (Dkt. 117-1) that were withheld pursuant to the attorney-client privilege. The Court is careful to note that to the extent that any such documents contain attorney-client communications related to the present case, Plaintiff may continue to withhold and/or redact such information.

## 2.    Work Product Doctrine

The same result follows with regard to the documents over which Plaintiff has asserted work product protection. Again, the work-product doctrine protects documents prepared by attorneys in anticipation of litigation for the purpose of analyzing and preparing a client's case. *Sandra T.E.*, 600 F.3d at 618; *see also Hickman v. Taylor*, 329 U.S. 495 (1947). Here, Plaintiff has invoked the doctrine in response to Defendant's request for the "file related to the *Jasinski* Litigation from any/or all attorneys and/or law firms who represented or consulted." *See* (Dkt. 77-1) at ¶ 5.

First, the magistrate judge correctly found that the work product protection applies to the documents in Thompson Coburn's *Jasinski* file, even though they were created to advance the underlying litigation in the Cook County Circuit Court. *See Grolier*, 462 U.S. at 25 ("[T]he literal language of the Rule protects materials prepared for *any* litigation or trial as long as they were prepared by or for a party to the subsequent litigation.") (emphasis in original); *Hobley*, 433 F.3d at 949 (work product protection "endures after termination of the proceedings for which the documents were created, especially if the old and new matters are related"); *see, e.g.*, *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 237 F.R.D. 176, 182 (N.D. Ill. 2006) (concluding

that the work product doctrine is best served by extending it to subsequent litigation); *Endeavor Energy Res., L.P. v. Gatto & Reitz, LLC*, 2017 WL 1190499, at *11 (W.D. Pa. Mar. 31, 2017) ("[E]ven if documents were prepared for a different case, work-product protection may apply as long as the cases 'are closely related in parties or subject matter.'") (quoting *Louisiana Mun. Police Employees Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 309 (D.N.J. 2008)).

As the magistrate judge noted, in limited situations documents protected as attorney work product are nonetheless discoverable if a party can establish a "substantial need" for the documents and cannot obtain equivalent materials without "undue hardship." Fed. R. Civ. P. 26(b)(3)(A)(ii). In addition, like the attorney-client privilege, the work product protection is subject to waiver. Courts generally apply the same "at-issue" test used in attorney-client privilege scenarios to determine whether the work-product protection has been waived. *See Lyon*, 2011 WL 3880948 at *4. The substantial-need and waiver analyses are separate. *See, e.g.*, *Abbott Labs. v. Alpha Therapeutic Corp.*, 200 F.R.D. 401, 409 (N.D. Ill. 2001) (analyzing first whether the work product protection applied and then whether the protection was waived *or* whether the requesting party had demonstrated a need for the materials).

Here, because the Court has already found that Plaintiff waived the attorney-client privilege with respect to communications between itself and Thompson Coburn for the purposes of the *Jasinski* matters, it follows that Plaintiff also has waived the work-product protection to the extent that the materials sought relate to the *Jasinski* matters. *Lyon*, 2011 WL 3880948 at *4. Because the waiver analysis applies instead of the substantial-need analysis, the magistrate judge did not err—as Plaintiff suggests—in failing to differentiate between ordinary work product and opinion work product. (Dkt. 117) at 14. The Court therefore overrules Plaintiff's objections.[2]

---

[2] Although the magistrate judge appears to have conflated the waiver analysis with the substantial-need analysis (*see* (Dkt. 122) at 14 (finding that Defendant established a substantial need for the documents

Plaintiff is directed to produce all documents identified on its privilege log (Dkt. 117-1) that were withheld as work product. Again, Plaintiff may continue to withhold and/or redact any work product related to this case.

## **CONCLUSION**

For the reasons stated above, the Court grants Plaintiff's motion for reconsideration (Dkt. 85), grants in part and denies in part Defendant's motion for reconsideration (Dkt. 89), and denies Plaintiff's motion to enforce (Dkt. 87). The Court further overrules Plaintiff's objections (Dkt. 117) the magistrate judge's ruling. Fact discovery in this case is extended to March 9, 2018. The case is set for status on March 12, 2018 at 9:00 a.m.

Hon. Virginia M. Kendall
United States District Judge

Date: February 5, 2018

---

because "the Bank has put directly in issue causation by filing its complaint and issue with respect to causation is whether Pierce caused all the damage that the Bank says.")), the end result remains the same, as the Court orders Plaintiff to produce the disputed documents.