# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WEBSTER BANK, N.A., | |
| Plaintiff, | Case No. 1:16-cv-02522 |
| v. | District Judge: Virginia M. Kendall |
| PIERCE & ASSOCIATES, P.C., | Magistrate Judge: Jeffrey T. Gilbert |
| Defendant. | |

## MOTION *IN LIMINE* TO BAR PLAINTIFF FROM OFFERING ANY EVIDENCE REGARDING THE BRIAN MERFELD MEMO

Defendant, Pierce & Associates, P.C. (hereinafter "Pierce") moves, *in limine,* for an order prohibiting comment, argument, or statement by counsel or any witness during opening statement or at any time during voir dire, trial or during any testimony or evidence or otherwise, regarding a memorandum authored by Attorney Brian Merfeld of Pierce on April 25, 2014 (hereinafter, the "Merfeld Memo"), on the following grounds:

### INTRODUCTION

1. During discovery in this case, litigation ensued over an April 25, 2014 abstract/memorandum written by an attorney of Pierce named Brian Merfeld. The details of that litigation and the memorandum are recounted in this Court's February 5, 2018 order. *See* Dkt. #127.

2. In short, during the general time period that Pierce was relieved of its duty from representing Plaintiff Webster Bank (hereinafter, "Webster") in the *Jasinski* matters, Merfeld, who had not worked on those cases, reviewed the *Jasinski* file at the request of a more senior attorney and authored a memorandum regarding Pierce's handling of that file, and an issue that arose in the case. The memorandum included legal analysis and legal thinking. *Id.* Pierce eventually produced that memorandum to Plaintiff.

1

3. Pierce anticipates that Webster or its attorneys will make reference to and seek to admit evidence at trial addressing the Merfeld Memo.[1] The admission of such evidence would be improper for the reasons that follow.

**ARGUMENT**

**I. Evidence at trial relating to the Merfeld Memo should be excluded because it qualifies as improper character evidence or evidence of prior bad acts.**

1. Federal Rule of Evidence 404(b)(1) provides that "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404 continues that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith…" Fed. R. Evid. 404(b)(2) continues that "this evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

2. The Merfeld Memo does not provide any proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Rather, it is simply evidence of what Plaintiff will characterize as prior bad acts or a character trait, which are inadmissible under Rule 404.

3. The Merfeld Memo was authored *after* the conduct in the *Jasinski* cases took place. Webster will likely attempt to use this evidence to argue or try to develop an inference by the jury that Pierce was bad before, so here it must have been bad again, or that Pierce always acts like it did in the situations addressed in the Merfeld Memo. Webster will attempt to try to argue that Pierce admitted that what it did was wrong. Such evidence is inadmissible under Rule 404 to prove that Pierce

---

[1] Pierce also produced an email closely associated with the memo that falls within the scope of this instant motion.

deviated from the standard of practice in representing Webster in *Jasinski*, and the Court should exclude it.

**II. In the alternative, evidence regarding the Merfeld Memo is improper under Rule 403 because it would both confuse the jury, and result in unfair prejudice to Pierce.**

4. To the extent that the Court does not conclude that the Merfeld Memo is impermissible character evidence, or evidence of prior bad acts, the evidence is improper under Federal Rule of Evidence 403. The Merfeld Memo would confuse the jury. Further, any probative value that the Merfeld Memo has would be substantially outweighed by the unfair prejudice that would result to Pierce's defense if it is introduced at trial.

4. Federal Rule of Evidence 403 provides that:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Webster introducing evidence of the Merfeld Memo would result in several of the scenarios that Fed. R. Evid. 403 seeks to avoid, and the evidence is not critical to Webster's case. The Merfeld Memo is authored by an attorney at Pierce who was not involved in the underlying *Jasinski* litigation. On the contrary, Webster can introduce other evidence in the record and call Pierce attorneys who actually were involved in the *Jasinski* litigation as witnesses, which results in any probative value being limited in comparison to the unfair prejudice to Pierce.

5. The jury would likely be confused by several aspects the Merfeld Memo. The Merfeld Memo is replete with legal research, legal analysis, and work product that directly addresses the claims going to trial. While the Court overruled Pierce's work-product based objections to the production of the Merfeld Memo, the Court did so based on testimony that Webster argued supported that the Merfeld Memo was not created in anticipation of litigation. Dkt. # 85, 127. The Court's order that compelled the production of the Merfeld Memo could not have changed its observation during an *in*

3

*camera* review of the *contents* of the Merfeld Memo that "there is no question that the memo is work product." Ex. A, P. 16:15-17:3.

6. The work product issue is relevant to the instant motion because the Merfeld Memo contains what Webster will characterize as an admission that Pierce acted improperly as it related to the Illinois single refilling rule's applicability to the *Jasinski* litigation. The Merfeld Memo contains the following statement: "the case law sets out that a Plaintiff may re-file once and only once…" The jury will be confused by hearing evidence on this issue because it is a purely legal question, actually the penultimate question in this litigation, that was resolved by the Court on the parties' motions for summary judgment. *See* Dkt. # 157. As such, the interpretation of the single filing rule is no longer at issue. What is at issue, is whether Pierce's actions that placed the single refilling rule at issue in the case were in accordance with the standard of practice. The jury would risk confusing what Pierce said, with what is the actual question for the jury to answer is. Jury confusion will also result because it is the Court's job to instruct the jury on the law. The jury would be confused by a Pierce attorney making a statement effectively saying what the law was, or is.

7. Additional jury confusion may result because of the time periods at issue. The Merfeld Memo contained research that obviously occurred *after* the issues in *Jasinski* arose. The jury may not be capable of understanding why legal research occurred after the issues, and not be able to separate the conflating issues of: (1) hindsight being 20/20; and (2) Pierce's supposed admission following *post hoc* legal research. If the jury is to hear evidence regarding the Merfeld Memo, the jury would likely be confused and not understand the context of the Merfeld Memo and why it says what it says. Rather, the jury would likely only respond to the damning portion of the Merfeld Memo, which makes it highly prejudicial to Pierce, and is of limited probative value to Webster.

8. Lastly, the sheer nature of the Merfeld Memo may confuse the jury. As is often the case with legal research memoranda, the point of the writing is not to come to a conclusion, but rather to lay

out the law and the facts as a reference. The Merfeld Memo generally does that, with the exception of the above-referenced statement. The jury may be confused by the nature of the Merfeld Memo when considering how Webster presents it, because the purpose of the Merfeld Memo was not necessarily to say whether Pierce did anything wrong, but rather about what the law on the issue was. Notably, the law on the issue was not affirmatively decided until the Supreme Court's decision in *First Midwest Bank v. Cobo*, 2018 IL 123038, Docket No. 123038, 2018 Ill. LEXIS 1232, almost five years after the issue was raised in *Jasinski*. Further, given the hire of Lee Perres and his role at Pierce to implement quality control policies and procedures, perhaps the point of the Merfeld Memo itself was to learn from the issue going forward.

9. In light of the above, the contents and the context of the Merfeld Memo would confuse the jury. The jury confusion, in addition to the fact that the statement will be characterized as an admission by Webster, result in an extremely unfair situation for Pierce. The limited probative value of the Merfeld Memo, considering that evidence of Pierce's actions in the *Jasinski* cases is available from other sources, is highly outweighed by the unfair prejudice that would result from its introduction into evidence at trial.

### III. The Merfeld Memo contains evidence of subsequent remedial measures that make it inadmissible under Fed. R. Evid. 407.

10. The Merfeld Memo also qualifies as evidence of subsequent remedial measures, which are not properly admitted at trial. Fed. R. Evid. 407 says:

> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:
>
> - negligence;
> - culpable conduct;
> - a defect in a product or its design; or
> - a need for a warning or instruction.
>
> But the court may admit this evidence for another purpose, such as impeachment or — if disputed — proving ownership, control, or the feasibility of precautionary measures.

5

11. The Merfeld Memo is in and of itself a subsequent remedial measure. Mr. Merfeld researched and authored the memorandum at the direction of Lee Perres to lay out the facts on what happened with the *Jasinski* litigation. *See generally* Deposition of Lee Perres, P. 133-137, 301. As the record demonstrates in this case, Lee Perres was hired as a risk management supervisor, and part of his job was to implement policies and procedures to avoid some of the issues raised by Webster that resulted in this instant lawsuit. *Id.*

12. Evidence of subsequent remedial measures were prohibited from trial due to their ability to confuse the jury into concluding that the defendant engaged in wrongdoing simply because it took action that seems to acknowledge that a mistake was made. The evidence of subsequent remedial measures here should similarly be excluded.

**WHEREFORE**, for the reasons stated above, Defendants respectfully request that this Court enter an Order prohibiting comment, argument or statement by counsel or any witness during opening statement or otherwise at any point during trial, on any testimony or evidence regarding the Merfeld Memo and corresponding email, and grant such further relief as the Court deems appropriate and just.

Respectfully submitted,

HINSHAW & CULBERTSON LLP

By: /s/ *Justin M. Penn*  
Justin M. Penn

David M. Schultz  
Justin M. Penn  
Brandon S. Stein  
Hinshaw & Culbertson LLP  
151 N Franklin St – Ste 2500  
Chicago, IL 60606  
312-704-3000  
dschultz@hinshawlaw.com  
jpenn@hinshawlaw.com  
bstein@hinshawlaw.com

## **CERTIFICATE OF SERVICE**

       I certify that on January 27, 2020 a copy of the foregoing was filed electronically. Notice of this filing was sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

                                         */s/ Justin M. Penn*