IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **WEBSTER BANK, N.A.**, a national banking association,<br><br>**Plaintiff,**<br><br>v.<br><br>**PIERCE & ASSOCIATES, P.C.,**<br><br>**Defendant.** | Case No. 16-cv-2522<br><br>Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Webster Bank, N.A. ("Webster") is suing Defendant Pierce & Associates, P.C. ("Pierce") for legal malpractice under Illinois law, asserting that Defendant negligently handled a suit-on-note claim against Kristen Jasinski. Before the Court is Defendant's motion to strike Plaintiff's expert, G. Patrick Murphy ("Murphy"). (Dkt. 174) For the reasons that follow, Defendant's motion [174] is denied. Murphy may testify consistent with this opinion.

## BACKGROUND

The following facts are taken from the Court's earlier summary judgment ruling. (Dkt. 157) On March 8, 2006, Kristen Jasinski obtained a loan from Webster. She eventually defaulted, and Webster sought to accelerate the loan and referred the matter to Pierce. Pierce accepted Webster's referral and filed a complaint against Jasinski in the Circuit Court of Cook County, Illinois on February 16, 2010. Pierce voluntarily dismissed the complaint on April 20, 2010.

Pierce then filed a second, nearly identical lawsuit against Jasinski on June 19, 2012. That lawsuit was dismissed for want of prosecution. Pierce successfully obtained an order vacating the dismissal for want of prosecution on May 1, 2013. Ultimately, the second lawsuit was dismissed again for want of prosecution on July 9, 2013. On September 9, 2013, Pierce filed a third lawsuit against Jasinski. Jasinski moved to dismiss the third lawsuit on February 14, 2014 on the grounds that it violated the Illinois single refiling rule, 735 Ill. Comp. Stat. Ann. 5/13-217.

On January 31, 2014, Pierce filed a motion seeking to vacate the July 9, 2013 dismissal of the second lawsuit. The Circuit Court granted the motion on February 26, 2014 and, at the same time, granted Pierce's oral motion to voluntarily dismiss the second lawsuit without prejudice. Pierce did not inform Webster that the second lawsuit was dismissed.

Webster obtained new counsel, Thompson Coburn LLP, in April 2014 in an attempt to vacate the dismissal of the second lawsuit and oppose Jasinski's motion to dismiss the third lawsuit. On July 11, 2014, the Circuit Court denied Thompson Coburn's motion to reinstate and vacate the dismissal, and granted Jasinski's motion to dismiss based on the Illinois single refiling rule. During this time, at least one Pierce attorney was aware of the Illinois single refiling rule and knew that there were no applicable exceptions. Later, in April 2016, Pierce acknowledged in a letter to the Illinois Attorney Registration and Disciplinary Commission that the "case law was clear about the inability to re-file a case after two voluntary dismissals." (Dkt. 157, 4)

Webster filed the instant legal malpractice action on February 23, 2016. This Court denied Pierce's motion for summary judgment on March 14, 2019. In doing so, this Court held that the Illinois single refiling rule applied to the three Jasinski lawsuits, that Webster's claim was no longer viable after Pierce's unauthorized dismissal of the second lawsuit on February 26, 2014 due to the Illinois single refiling rule, and the law on the single refiling rule was settled at the time of Pierce's representation. Having made these determinations, the only remaining "inquiry turns to the standard of care and whether Pierce breached that standard." (Dkt. 157, 9) The Court noted that the jury will decide this question based on "expert testimony at trial." (Dkt. 157, 10)

## **LEGAL STANDARD**

Federal Rule of Evidence 702 and the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), provide the legal framework for the admissibility of expert testimony. *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 834 (7th Cir. 2015). The purpose of the *Daubert* inquiry is to scrutinize proposed expert testimony to determine whether it has "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field" so as to be deemed reliable enough to present to a jury. *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). Rule 702 requires the district court judge to act as a gatekeeper to ensure that admitted expert testimony is relevant, reliable, and has a factual basis. *Id.* at 809; *see also Daubert*, 509 U.S. 589. The Court is mindful that questions of whether the expert is credible

3

or whether his theories are correct given the circumstances of a particular case is a factual one that is left for the jury to determine after opposing counsel has been provided the opportunity to cross-examine the expert regarding his conclusions and the facts on which they are based. *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000).

When evaluating whether expert testimony is admissible, the district court must ascertain (1) whether the expert is qualified, (2) whether his methodology is scientifically reliable, and (3) whether the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 893 (7th Cir. 2011). "The proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). An expert is qualified to testify by virtue of his "knowledge, skill, experience, training or education." *See* Fed. R. Evid. 702. A court should consider the proposed expert's full range of education, experience, and training. *LG Elec. U.S.A., Inc. v. Whirlpool Corp.*, 661 F. Supp. 2d 940, 951 (N.D. Ill. 2009).

In assessing reliability, a court must ensure that the proffered expert testimony is "well-grounded in methods and procedures" of the expert's technical discipline. *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002). When an expert proffers testimony based on his experience, "[i]t is critical under Rule 702 that there be a link between the facts or data the expert has worked with and the conclusion the expert's testimony is intended to support." *United States v. Mamah,*

332 F.3d 475, 478 (7th Cir. 2003) (citing *Gen. Elec. v. Joiner*, 522 U.S. 136, 146) (1997)). An expert "who invokes 'my expertise' rather than analytic strategies widely used by specialists is not an expert as Rule 702 defines the term." *Zenith Elec. Corp. v. WH-T Broad. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005); *see also Mamah*, 332 F.3d at 478. Ultimately, the touchstone of admissibility under Rule 702 is helpfulness to the jury. *United States v. Benson*, 941 F.2d 598, 604 (7th Cir. 1991).

## ANALYSIS

Defendant moves to strike Murphy's expert testimony. Defendant first argues that Murphy is unqualified, and second, that Murphy's report is deficient because it fails to show how his experience informs his conclusions and only contains impermissible legal conclusions.

**1. Murphy's Qualifications**

Murphy is an attorney in private practice and a former Federal District Court Judge.[1] He retired from the bench in 2013 and now handles an assortment of civil cases. Defendant first argues that Murphy's experience as a lawyer and a federal judge does not qualify him to "opine" on issues involving a Cook County collections attorney and state court procedural rules. (Dkt. 174, 6) Defendant largely argues that Murphy lacks sufficient experience in state court—more specifically, Cook County—to address a "unique issue of state law." (*Id.* at 8) Pierce notes that, in the last twenty years, Murphy has only handled one case in Cook County, Murphy has never represented a loan servicer or debt collector, and has "virtually zero experience with

---

[1] The parties will not be permitted to refer to Mr. Murphy as Judge during the trial. Plaintiff will be able to ask Murphy about his professional experience.

the Illinois single refiling rule." (*Id.* at 7) Defendant emphasizes the last point, arguing that the "crux of this case is the application of the single refiling rule, and what reasonable attorneys would have known about the impact of the rule." (*Id.*) According to Defendant, this case involves the highly idiosyncratic rules and customs of high volume debt collection practices in Cook County, and Murphy is unqualified to speak to those matters.

In defense of its expert, Webster notes that Murphy's career includes more than 25 years in the practice of law and 16 years as a district court judge for the Southern District of Illinois. (Dkt. 179, 4) Since 2013, he has handled at least one hundred civil cases in Illinois state court. (*Id*). He testified that he has personally handled 20 suit-on-note cases and, while on the bench, presided over suit-on-note cases. (*Id.* at 5) (citing Ex. B, 59:22-60:5) He also testified that he has kept abreast of the seminal cases in the single filing rule. (*Id.* at Ex. B, 97:3-98:23) Webster further argues that Defendant incorrectly frames the issue as one of Cook County procedure, the nuances of debt collection, and the application of the single filing rule. According to Webster, the real "crux of this case" is whether Pierce "possessed and used the knowledge, skill, and care ordinarily used by a reasonably careful Illinois civil litigator under similar circumstances." (*Id.* at 5) Webster believes Murphy is qualified to speak to this question. Webster further notes that Murphy is not being proffered to provide expert testimony on the applicability or interpretation of the Illinois single refiling rule, as this Court already ruled on the applicability of that rule in its

summary judgment opinion.[2] Thus, the only remaining inquiry is the applicable standard of care and whether Pierce breached that standard.

The Court "must look at each of the conclusions [an expert] draws individually to see if he has the adequate education, skill, and training to reach them." *Hall v. Flannery*, 840 F.3d 922, 926 (7th Cir. 2016). "[I]n a legal malpractice suit, an expert on the standard of professional care does not necessarily need to be qualified by experience in the particular specialty; a lawyer may instead be qualified by studying the law, i.e., by 'knowledge' rather than by 'experience' under Rule 702, but general legal training and even standing in the legal community do not always qualify a lawyer to opine on the standard of professional care." *Rivera v. Guevara*, No. 12 C 04428, 2018 U.S. Dist. LEXIS 105198, at *17-18 (N.D. Ill. June 22, 2018); *compare CDX Liquidating Trustee ex rel. CDX Liquidating Trust v. Venrock Assocs.*, 411 B.R. 571, 585 (Bankr. N. D. Ill. 2009) (holding law professor specializing in corporate governance law was qualified to opine on a board's fiduciary obligations under Delaware law even though he had never practiced in Delaware and had never given a board legal advice), *with Landeen v. PhoneBILLit, Inc.*, 519 F. Supp. 2d 844, 848 (S.D. Ind. 2007) ("Although the Court has no doubt that [the witness] has considerable experience as a lawyer in the Indianapolis community, there is no specialized training, experience, or education in [the witness]'s background that would qualify him as an expert on matters of legal malpractice."). This is a fact-

---

[2] As mentioned above, this Court found that the Illinois single refiling rule applied to the three Jasinski cases, and that Webster's claim against Jasinski was no longer viable because of this rule. This Court expressly rejected Defendant's argument that the application of the single refiling rule was "unsettled" or unknown. (Dkt. 157, 8-10)

7

intensive inquiry and depends in large part on the area of specialty and the scope of the opinion expressed. *See Am. Int'l Adjustment Co. v. Galvin*, 86 F.3d 1455, 1461-62 (7th Cir. 1996) (Seventh Circuit upheld a state trial judge expressing opinions on whether a lawyer met the applicable standard of care in an ordinary negligence suit tried in state court).

Here, Webster has demonstrated that Murphy is qualified by knowledge and experience to address the standard of care for Illinois civil litigators. The Court agrees with Plaintiff that the crux of this case is not about the nuances and intricacies of the single refiling rule or debt collection practices. Rather, the issue before the jury involves the standard of care for a reasonable attorney practicing in Illinois under similar circumstances. Murphy is a seasoned Illinois civil litigator who currently practices in state court. His principal basis for his opinions is his own experience and knowledge, and that basis is sufficiently reliable to survive a challenge under *Daubert* and the Federal Rules of Evidence. Pierce may attempt to demonstrate or argue that the jury should not credit Murphy's opinions due to his limited familiarity with Cook County or debt collection practices, but that is a question of the weight a jury should give to the evidence rather than its admissibility. Murphy is qualified to opine in this matter.

**2. Reliability of Murphy's Report**

Defendant next argues that Murphy's expert report is deficient because Murphy does not show how his experience informs his conclusions, and he only

8

asserts outcome-determinative legal conclusions. The Court will address each argument in turn.

First, Defendant argues that Murphy has failed to set forth any methodology or analytical strategies to support his conclusions: "[i]n essence, Murphy has solved the equation but has not shown his work." (Dkt. 174, 4) Thus, Defendant argues, Murphy should be barred because he only relies on his own expertise instead of analytical methods. Plaintiff counters that Murphy is permitted to rely on his expertise in reaching conclusions, Murphy has extensively reviewed the applicable facts and record of the underlying case, and Murphy applied the relevant Illinois law to Defendant's actions. Murphy's report also analyzed each step of Pierce's representation, pinpointing where, in Murphy's assessment, Pierce went wrong.

An expert's reliance on experience alone does not necessarily render his opinion unreliable. *See* 2000 Advisory Committee Notes to Rule 702; *United States v. Neushwander*, No. 15 C 542-1, 2017 WL 45572212, at *3 (N.D. Ill. Oct. 14, 2017) (citing *Clark v. Takata Corp.*, 192 F.3d 750, 756-57 (7th Cir. 1999)). However, "[i]n cases where an expert's testimony is based mainly on personal observations and professional experience, the court, as the *Daubert* gatekeeper, 'must probe into the reliability of these bases when determining whether the testimony should be admitted.'" *The Cadle Co. v. Sweet & Brousseau, P.C.*, 3:97-CV 0298-L, 2006 WL 435229, at *4 (N.D. Tex. Feb. 23, 2006). Courts do so by examining whether the expert has adequately described how his experience informs his conclusions. *See id.* (striking former Texas state court judge from serving as an expert in a legal malpractice case

9

where he did "not provide the court with sufficient information concerning the facts and data underlying [his] testimony or the principles and methodology which shaped it," and admitted that he had not personally examined the record in the underlying suit); *Neushwander*, 2017 WL 45572212, at *3 (striking an expert where he failed to "sufficiently explain how [he] has applied any specific expertise to the facts of this case").

Murphy has sufficiently "shown his work." Unlike the expert in *Cadle Co.*, Murphy spent many hours reviewing the underlying case file. (Dkt. 174, Ex. B, 25:3-25) (Murphy stated that he spent over 25 hours reviewing the case record) His opinions also go step by step through Pierce's relevant actions, identifying which actions allegedly deviated from those a reasonably careful Illinois attorney would take. Murphy has sufficiently linked his expertise to his opinions such that his methodology is reliable.

Pierce next argues that Murphy's testimony is inadmissible because he offers opinions that are outcome-determinative legal conclusions. Expert testimony that contains a legal conclusion that determines the outcome of a case is inadmissible. *RLJCS Enterprises, Inc. v. Professional Ben. Trust Multiple Employer Welfare Ben. Plan and Trust*, 487 F.3d 494, 498 (7th Cir. 2007); *Good Shepard Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003). In considering whether the proposed testimony is improper, "courts and parties must recognize the difference between 'stating a legal conclusion' (which is not permitted) and 'providing concrete information against which to measure abstract legal concepts' (which is permitted)."

*Neushwander*, 2017 WL 4572212, at * 3 (citing *United States v. Blount*, 502 F.3d 674, 680 (7th Cir. 2007)). It is often difficult to distinguish between expert opinions that impermissibly impinge on the jury's function through outcome-determinative legal conclusions and those that merely assist the jury in making their ultimate decision. This is especially true in legal malpractice cases, "where the applicable law *requires* a party to offer expert testimony regarding the standard of care applicable to lawyers in the situation." *Certain Underwriters at Lloyd's v. Johnson & Bell, Ltd.*, No. 10 C 07151, 2013 WL 6490234, at *10 (N.D. Ill. Dec. 10, 2013) (emphasis in original); *see also Georgou v. Fritzshall*, 178 F.3d 453, 456 (7th Cir. 1999) ("Illinois requires the plaintiff in a legal-malpractice case to establish through expert testimony the standard of care to which the accused lawyer should have adhered.").

The majority of Murphy's testimony does not run afoul of the principle that experts may not state legal conclusions. He has identified actions that he contends Pierce should have taken with respect to the Jasinski cases and that "any reasonably competent Illinois lawyer" would have taken. (Dkt. 174, Ex. B, 12) This is precisely what Illinois law requires for an expert in a legal malpractice case. Accordingly, Murphy's testimony should not be barred in its entirety.

However, Murphy will not be permitted to offer the following testimony as it amounts to legal conclusions that impinges on the duty of the jury: "Pierce's action is an egregious violation of the standard of care" (Dkt. 174, Ex. B, 11), "Pierce's actions evidence a conscious indifference by Pierce to Webster," (*Id*.) "[t]he unauthorized

dismissal of the second action on February 26, 2014 by Pierce is a deviation of the standard of care." (*Id.*)

Murphy can testify as to the standard of care, what reasonably careful lawyers would have done, and what mistakes Pierce made. Murphy cannot tell the jury that Pierce violated the standard of care—that is the very question the jury will answer. It is the jury's role to determine whether Pierce violated the standard of care, not Murphy's. *See Halcomb v. Washington Metropolitan Area Transit Authority*, 526 F. Supp. 2d 24, 27 (D.D.C. 2007) ("[A]n expert may offer his opinion as to facts, that, if found, would support a conclusion that the legal standard at issue was satisfied, but he may not testify as to whether the legal standard has been satisfied."). Murphy may also testify as to causation for Webster's damages in terms of attorneys' fees and costs. But any causation testimony must be based on Pierce's conduct, not on conclusory statements that Pierce violated the standard of care. Again, Murphy may testify that Pierce's actions caused Webster to irretrievably lose its cause of action against Ms. Jasinski, that Pierce could have prevailed on the underlying suit-on-note action if it behaved differently, and that reasonably careful Illinois attorneys would have behaved differently. But Murphy cannot conclusively state that Pierce violated the standard of care.

## **CONCLUSION**

For the reasons stated above, Defendant's motion to exclude Murphy's expert report and testimony [174] is denied. He may testify consistent with this opinion.

E N T E R:

Dated: February 10, 2020

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge